IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION

Laurence Bartell and Jerry Stauffer,     :

          Plaintiffs     :     Civil Action 2:14-cv-00401

     v.                 :     Judge Sargus

LTE Club Operations Company, Inc.,     :     Magistrate Judge Abel

          Defendant     :

**Report and Recommendation**

This matter is before the Magistrate Judge for a report and recommendation on defendant LTF Club Operations Company, Inc.'s December 11, 2014 motion to transfer venue (doc. 26).

## I.    Allegations in the Amended Complaint

The amended complaint makes the following allegations. Defendant LTF Club Operations Company, Inc. ("Life Time") advertises, solicits and encourages individuals to sign membership and service contracts. Am. Compl. ¶ 8. Life Time's membership contracts are standard form contracts titled "General Terms Agreement" ("GTA"). *Id.* at ¶ 9. To establish a gym membership, a consumer must sign the GTA and permit Life Time to collect joining fees, first month membership fees, and monthly membership dues via an electronic fund transfer from the members or credit account. *Id.* at ¶ 10. Prior to 2013, the GTA did not state that Life Time could increase the amount of the membership dues. *Id.* at ¶ 14. In 2013, Life Time inserted language in the GTA that

permitted unilateral increases of membership dues. *Id.* at ¶ 15. By 2011, Life Time had begun increasing memberships and the amount of its EFT charges to members credit and bank accounts. *Id.* at ¶ 16.

On June 9, 2010, plaintiff Laurence Bartell signed a GTA. *Id.* at ¶ 21. Bartell did not authorize Life Time to unilaterally increase the amount of his recurring total monthly account or his membership dues when he signed the GTA. *Id.* at ¶ 22. Life Time increased Bartell's monthly membership dues on three occasions without his authorization. *Id.* at ¶ 26. The GTA did not include cancellation terms and conditions, an easily detachable notice of cancellation, and a notice of cancellation containing the name of the seller, the address of the seller's place of business, and the date of the contract as required by Ohio Revised Code § 1345.44. *Id.* at ¶ 29.

On December 7, 2013, Bartell delivered a notice of cancellation cancelling his membership, but Life Time failed to immediately cancel his membership or provide a refund as required by Ohio law. *Id.* at ¶¶ 31-32. In January 2014, Life Time charged Bartell an additional month's membership dues through an EFT charge. *Id.* at ¶ 33.

In January 2010, plaintiff Jerry Stauffer signed a GTA with Life Time. *Id.* at ¶ 34. The GTA did not authorize Life Time to unilaterally increase the amount of his recurring total monthly amount or his membership dues. *Id.* at ¶ 37. Without authorization, Life Time unilaterally increased Stauffer's monthly membership dues on at least four occasions. *Id.* at ¶ 40. The GTA did not include cancellation terms and conditions, an easily detachable notice of cancellation, and a notice of cancellation

2

containing the name of the seller, the address of the seller's place of business, and the date of the contract as required by Ohio Revised Code § 1345.44. *Id.* at ¶ 43.

Plaintiffs bring this action on their behalf and as a class action on behalf of the following classes and subclasses:

    a.    A Rule 23(b)(3) nationwide class including all current and former members of Life Time Fitness who signed a GTA and were then charged Membership Dues in excess of the amount set forth in the GTA.

    b.    A Rule 23(b)(2) Ohio subclass including all individuals who are current or future members of Life Time Fitness;

    c.    A Rule 23(b)(3) Ohio subclass including all individuals who are current members of Life Time Fitness;

    d.    A Rule 23(b)(3) Ohio subclass including all individuals who are former members of Life Time Fitness in Ohio.

*Id.* at ¶ 45.

The amended complaint asserts claims for breach of contract, violations of the Electronic Funds Transfer Act, fraud, violations of Ohio's Prepaid Entertainment Contract Act ("OPECA") and the Ohio Consumer Sales Practices Act ("OCSPA"), and for unjust enrichment.

## II.     Arguments of the Parties

### A.     Defendant Life Time

Defendant Life Time seeks an order transferring plaintiff's proposed putative nationwide class action to the United States District Court for the District of Minnesota for the convenience of the parties and witnesses and in the interests of justice. Life Time argues that the amended complaint dramatically expanded plaintiffs' claims, which had previously been limited to Ohio statutes and common-law and Ohio residents. Plaintiffs now seek to certify a nationwide class and a subclass of Minnesota residents, including a new Minnesota named plaintiff.[1]

Life Time argues that because the amended complaint seeks to certify a nationwide class action, Minnesota is central to this claim. Life Time formulates its contracts, policies, and practices at its headquarters in Chanhassen, Minnesota. All determinations of dues increases are made at its headquarters and not at any individual club. Life Time maintains that significant non-party witnesses reside in Minnesota, including Lynn Pahl, defendant's past Vice President of Member Relations. Account representatives for vendors who sent email and paper mail notices of membership dues increases also reside in Minnesota. Life Time also notes that three corporate representatives have already been deposed in Minnesota, and all other current employees with knowledge relevant to plaintiffs' new allegations are based in

---

[1]According to plaintiffs, Brian Copps was unable to serve as the Minnesota class representative. As a result, the first amended complaint was revised to only include plaintiffs Bartell and Stauffer and the Ohio and nationwide claims.

4

Minnesota. More than 19,000 pages of documents have already been produced from the headquarters in Minnesota, and documents relevant to plaintiffs' new allegations are also there. Life Time further asserts that more putative class members reside in Minnesota than any other state.

Defendant argues that given Minnesota's centrality to the amended complaint, plaintiffs' interests in maintaining an Ohio forum carries little weight. Plaintiffs' choice of forum is entitled to less weight once a case has been removed, as in this case. Defendants also argue that because plaintiffs seek to certify a nationwide class action, Ohio's interest in the dispute is considerably weakened.

Life Time works with outside vendors in Minnesota to send notifications of dues increases. Its current mail vendor involved with sending notifications is the Japs-Olson Company, located in Saint Louis Park, Minnesota. A prior vendor, Quantum Graphics, is located in Shelby Township, Minnesota. Life Time has worked with NCR Corporation to send electronic notices through its Minnesota account representative.

According to Life Time, it was founded in Minnesota in 1992. It now operates 117 health clubs in 25 states, but only 6 of those clubs are located in Ohio. Minnesota has 24 clubs, more than any other state in the country. Minnesota also has had more memberships than any other state and has roughly four times as many memberships as Ohio.

Life Time argues that there is no doubt that this case could have originally been filed in the District of Minnesota. Life Time's corporate headquarters and principal

place of business are located in that district and a substantial part of the events underlying plaintiffs' claims occurred there. As a result, Life Time contends that the issue turns on whether the convenience of the parties and witnesses and interests of justice favor a transfer. Life Time maintains that the balance of factors weighs heavily in favor of Minnesota.

Life Time argues that plaintiffs' choice of Ohio as a forum should not be given deference because they seek a nationwide class. Each of the many potential plaintiffs may claim the right to have the action heard in his forum and that the nominal plaintiff's role in the litigation is likely to be quite minimal. Defendant argues that the alleged conduct underlying the claims has no meaningful connection to Ohio and the operative facts occurred in Minnesota. The claims arose at the location where the corporate decisions were made. Defendant contends that although the individual claims of the named plaintiffs Bartell and Stauffer have a limited connection to Ohio, the primary conduct at issue for both the individual claims and for the putative nationwide class occurred in Minnesota. Moreover, all of the critical documents and witnesses are located in Minnesota.

Life Time contends that nearly every essential witness, party and non-party, is located in Minnesota. No third-party vendor is located in Ohio. All of the relevant employees of defendant are located in Minnesota. Defendant argues that the fact that the plaintiffs reside in Ohio does not tip the balance in favor of Ohio. The role of a class representative is largely nominal.

6

Defendant argues that the interests of justice favors transfer to Minnesota. The local interest in the controversy strongly favors Minnesota, and in class actions, courts give weight to the jurisdiction where the corporation is located because that jurisdiction would have a particular interest in the outcome of the case. The remaining factors are neutral and do not favor Ohio. If a judgment is eventually entered, it would be equally of not more easily, enforceable in Minnesota. A transfer would not waste judicial resources. Although the case has been pending for a little more than eight months, the Court has not yet rendered any substantive rulings.

### B.  Plaintiffs

Plaintiffs argue that Life Time's motion to transfer venue should be denied because plaintiffs selected Ohio as their forum, they are located in Ohio, potential witnesses who sold and serviced plaintiffs' contracts are in Ohio, and Ohio has the most significant legal connection because there are three subclasses alleging violations of Ohio law. Plaintiffs also contend that this Court is less congested and resolves cases more efficiently than the District of Minnesota. This case has been pending in this Court since March 2014, and it has been actively litigated. No attorneys licensed in Minnesota have appeared for either party, which will mean both parties will be burdened with having to hire additional counsel.

Plaintiffs argue that Life Time fails to meet its burden of demonstrating that convenience of the parties and the interests of justice strongly favor transfer. Plaintiffs maintain that their choice of forum is entitled to deference and that even in the context

7

of a class action, their choice of forum is not irrelevant. Both Bartell and Stauffer reside in Ohio, and Life Time solicited their business in Ohio. The contract was entered into in Ohio, and the injuries occurred in Ohio.

Plaintiffs maintain that the private interests of the litigants weigh against transfer. The named plaintiffs are individual consumers who live in Ohio, and their testimony is vital. Plaintiffs contend that other potential witnesses are located in Ohio, in addition to counsel for both parties. To evaluate this factor, courts do not merely tally the number of witnesses; instead, courts evaluate the materiality of the testimony that witnesses may provide. Plaintiffs argue that the current and former employees of Life Time who sold and serviced the named plaintiffs' contracts are in Ohio. Plaintiffs maintain that these employees will need to be deposed, and their testimony may be needed at an evidentiary hearing or at trial.

Counsel for both parties are located in Ohio. No attorney appearing in this action is admitted to practice in Minnesota, and both parties would be required to hire additional counsel that will need to familiarize themselves with the litigation. Thousands of documents have been produced, and some depositions have already been taken. Although hiring additional counsel would only be a minor inconvenience to Life Time, it would be a substantial burden and a significant cost for plaintiffs to do so. Life Time is a large national corporation that is in a better financial position to litigate in plaintiffs' chosen forum.

8

Plaintiffs contend that the convenience of third party vendors is not entitled to any more weight than that afforded Life Time's own employees. These witnesses are contracted corporate agents who were paid by Life Time to provide a specific service. The convenience of large non-party corporations who conduct business nationwide is not compelling.  Plaintiffs also contend that the potential testimony of these corporate agents pales in comparison to that of the named plaintiffs. The services performed by these agents were limited in scope. Life Time drafted the dues increase notices and provided the members' email addresses, mailing addresses and instruction to the corporate agents for sending the notices. The services provided by these agents were entirely controlled by Life Time.

Plaintiffs further argue that the identification of a single non-employee, non-agent witness who will be burdened by venue in Ohio does not warrant transferring the case. Until recently, Lynn Pahl served as Vice President of Life time's Member Relations Divisions. If her deposition testimony is material, the trial testimony of a single, non-employee witness can be secured by video tape if she refuses to voluntarily appear at trial. Counsel for plaintiffs would travel to Minnesota to take Ms. Pahl's deposition.

Plaintiffs argue that the location of the documents is a neutral factor given the relatively low cost of transporting documents. The location of documents has become less significant as technological advances make the copying, storage and transfer of documents easier. Life Time has already produced more than 2,700 documents to

9

plaintiffs via transfer through an FTP site. The transfer of documents will continue to occur through electronic means.

Plaintiffs argue that all the operative facts occurred in Ohio, rather than Minnesota as Life Time asserts. Where breach of contract claims are involved, courts consider where the contract was negotiated or executed, where it was to be performed, and where the breach occurred. Here, the contracts were offered, signed and performed in various states, and Minnesota has no more connection to these claims than any other state. Plaintiffs maintain, however, that Ohio has the most significant contacts because in addition to the nationwide claims, the named plaintiffs alleged violations of the OCSPA and OPECA. Plaintiffs contend that the cases relied upon by Life Time either involved no conduct in the selected forum or were based on the fact that parallel litigation already existed in the transferee jurisdiction, neither of which is the case here.

Plaintiffs further argue that the interests of justice weigh against transfer. This Court's docket is significantly less congested, and cases are resolved more efficiently. Plaintiffs contend that Ohio has the strongest interest in the outcome of this litigation because the named plaintiffs reside in Ohio, and they seek three Ohio subclasses based on violations of OCSPA and OPECA. This Court is more familiar with Ohio law than the Minnesota court.

### III.    Discussion

Defendant moves to transfer venue to the District of Minnesota.  Section 1404(a) of Title 28 provides:

> For the convenience of the parties and witnesses, in the interests of justice, a district court may transfer any civil action to any other district or division where it might have been brought. . . .

28 U.S.C. § 1404(a). The factors to be considered under § 1404(a) are similar to those weighed by the courts in determining *forum non conveniens* motions; however, transfers may be granted "upon a lesser showing of inconvenience." *Norwood v. Kirkpatrick*, 349 U.S. 29, 32 (1955).   The moving party has the burden of demonstrating that the case should be transferred to a different forum.[2] *Factors Etc., Inc. v. Pro Arts, Inc.*, 579 F.2d 215, 218 (2d Cir. 1978); *Time, Inc. v. Manning*, 366 F.2d 690 (5th Cir. 1966); *Armco, Inc. v. Reliance National Insurance Company,* 1997 WL 311474 (S.D. Ohio W.D. May 30, 1997).  A motion to transfer venue under 28 U.S.C. §1404(a) is not intended merely to shift the burden of proceeding.  *Bacik v. Peek,* 888 F. Supp. 1405, 1415 (N.D. Ohio 1993); *AMF, Inc.*

---

[2]  Many courts have held that defendant must demonstrate that the balance of convenience strongly favors transfer.  *E.g., Gulf Oil Corp. v. Gilbert*, 330 U.S. 501, 508 (1947); *Koster v. Lumbermens Mutual Casualty Co.,* 330 U.S. 518, 524 (1947); *Nicol v. Koscinski,* 188 F.2d 537, 537 (6th Cir. 1951); *United States v. Cinemark USA, Inc.,* 66 F.Supp.2d 881, 887-89 (N.D. Ohio 1999)(and cases cited therein); *United States v. The Boeing Company,* 1998 WL 54976 at *1 and *2 (S.D. Ohio January 21, 1998); *Hanning v. New England Mutual Life Insurance Company,* 710 F.Supp. 213, 214 (S.D. Ohio 1989).  Recently, some courts have held that §1404(a) requires only that defendant demonstrate that the factors articulated in *Gulf Oil Corp* weigh in favor of transfer.  *E.g., Roberts Metals, Inc. v. Florida Properties Marketing Group, Inc.,* 138 F.R.D. 89, 92-93 (N.D. Ohio 1991); *Armco, Inc. v. Reliance National Insurance Company,* 1997 WL 311474 at *4 and *5 (S.D. Ohio 1997).  The rationale for these cases is that *Gulf Oil, Koster,* and *Nicol* were decided using the common law doctrine of *forum non conveniens* that required dismissal of the complaint if the motion was granted. Since that could be a harsh result if plaintiff was unable to re-file before the statute of limitations ran, courts granted a defendant's motion to dismiss based on *forum non conveniens* only where the forum plaintiff chose was "'so completely inappropriate or inconvenient that it is better to stop the litigation in the place where brought and let it start all over again somewhere else.'" *Norwood v. Kirkpatrick,* 349 U.S. 29, 31 (1995) quoting from *All States Freight v. Modarelli,* 196 F.2d 1010, 1011 (3d Cir. 1952).  But that the United States Supreme Court held in *Norwood v. Kirkpatrick,* 349 U.S. 29, 32 (1955) that §1404(a) did not just codify the common law doctrine of *forum non conveniens*, but also "permits courts to grant transfers upon a lesser showing of inconvenience."  The rationale advanced for the requirement of a strong showing, that plaintiffs' forum shopping is part of the judicial system and defendants' forum shopping undermines the judicial system, *Cinemark USA, Inc.,* 66 F.Supp.2d at 889, is not a strong justification. Nonetheless, to the extent that the "strong presumption" cases are grounded in the idea that a movant ordinarily has the burden of proof and that a showing that merely shifts the burdens of litigating in a foreign forum from one party to the other is insufficient to cause a court to transfer venue, the rule seems sensible.

*v. Computer Automation, Inc.* 532 F. Supp. at 1345.  It "provides for transfer to a more convenient forum, not to a forum likely to prove equally convenient or inconvenient." *Van Dusen v. Barrack,* 376 U.S. 612, 645-46 (1964).

The first step is to determine whether this suit could have been brought in the proposed transferee forum.  28 U.S.C. §1404(a)(The district court "may transfer any civil action to any other district or division where it might have been brought."). *Hoffman v. Blaski*, 363 U.S. 335, 343-44 (1960); *Martin v. Stokes,* 623 F.2d 469, 474 (6th Cir. 1980); *PT United Can Company Ltd. v. Crown Cork & Seal Company, Inc.,* 138 F.3d 65, 74 (2d Cir. 1998); *Neff Athletic Lettering Co. v. Walters,* 524 F.Supp. 268, 271 (S.D. Ohio 1981).

Once defendant demonstrates that jurisdiction over the parties can be obtained in the proposed transferee forum, the court must determine whether the private interests of the litigants and the public's interest in the administration of justice favors transfer. *Gulf Oil Corp. v. Gilbert*, 330 U.S. 501, 508-09 (1947).  The litigants' interests include:

> the relative ease of access to sources of proof; availability of compulsory process for attendance of unwilling, and the cost of obtaining attendance of willing, witnesses; possibility of view of premises, if view would be appropriate to the action; and all other practical problems that make trial of a case easy, expeditious and inexpensive.

*Gulf Oil Corp. v. Gilbert*, 330 U.S. 501, 508 (1947).  Public interests include docket congestion; the burden of trial to a jurisdiction with no relation to the cause of action; the value of holding trial in a community where the public affected live; and the familiarity of the court with the controlling law.  330 U.S. at 508-09.  The Court must

make an "individualized, case-by-case consideration of convenience and fairness." *Van Dusen v. Barrack,* 376 U.S. at 622.

Plaintiffs' Choice of Forum. What weight to give plaintiffs' choice of forum is a question that has produced considerable disagreement. Clearly, plaintiffs' choice of forum is not by itself dispositive. When proceeding under §1404(a), by definition venue properly lies in the district where plaintiffs filed suit and in the district defendant champions. A court must look to all the factors identified by the statute and by the Supreme Court in *Gilbert* and not limit itself solely to a determination of whether the other factors outweigh plaintiffs' choice of forum.

There is no one formulation that courts consistently follow when considering the weight to be given to a plaintiff's choice of forum. Wright, Miller & Cooper, *Federal Practice and Procedure: Civil* §3848 at n.4 ("The courts have developed a bewildering variety of formulations . . . ."). While a plaintiff's choice of forum is a factor to be considered, *Norwood v. Kirkpatrick*, 349 U.S. at 32, there is a wide divergence of opinion as to how much weight to give a plaintiff's choice of forum.

Judges of the Southern District of Ohio have held both that a plaintiff's choice of forum is "given considerable weight and the balance of convenience, considering all relevant factors, must be strongly in favor of a transfer before such will be granted," *Artisan Development v. Mountain State Development Corp.*, 402 F. Supp. 1312, 1314 (S.D. Ohio 1975); *United States v. The Boeing Company,* 1998 WL 54976 at *1 (S.D. Ohio January 21, 1998), and that a plaintiff's choice of forum is not given considerably greater weight

13

than other factors.  *Neff Athletic Lettering v. Walters,* 524 F. Supp. 268, 272 (S.D. Ohio 1981); *Mead Corp. v. Boldt*, 508 F. Supp. 193, 198 (S.D. Ohio 1981).  This Court has held that "a trial court retains discretion to determine the weight to be given the plaintiff's choice of forum on a case-by-case basis."  *Wendy's International, Inc. v. Suburpia Submarine Sandwich Shops of Milwaukee, Inc.*, C-2-84-1243 (S.D. Ohio E.D. Oct. 11, 1985)(unreported op. at p. 7).

When the cause of action has little connection with the forum, a plaintiff's choice of forum is entitled to no greater weight than any other factor.  *See Mead Corp. v. Boldt*, 508 F. Supp. at 198 (transferred because none of the actionable conduct occurred in the forum selected by plaintiff and most of the witnesses were located in the transferee forum). Here, the contracts were offered, signed and performed in various states, and Minnesota has no more connection to these claims than any other state.

Plaintiffs' choice of forum is entitled to somewhat less weight because they are no longer in their chosen forum based on defendants' removal of the action to this Court. *See Jamhour v. Scottsdale Ins. Co.*, 211 F. Supp. 2d 941, 947 (S.D. Ohio 2002). Deference to plaintiffs' chosen forum is also lessened by the fact that the action is brought as a class action.  *Koster v. American Lumermen's Mut. Cas. Co.,* 330 U.S. 518, 524 (1947) ("Where there are only two parties to a dispute, there is good reason why it should be tried in the plaintiff's home forum if that has been his choice. But where there are hundreds of potential plaintiffs . . .  the claim of any one plaintiff that a forum is appropriate merely because it is his home forum is considerably weakened").

14

Although plaintiffs' choice of forum is not entitled complete deference, the fact that this is a proposed class action does not mean that plaintiffs' choice is entitled to no deference. Therefore, this factor still slightly favors plaintiffs.

Convenience of the Witnesses.  Courts normally give considerable weight to this factor.  *E.g., Picker International, Inc. v. Travelers Indemnity Company,* 35 F. Supp. 2d 570, 573 (N.D. Ohio 1998).  However, the convenience of the witnesses does not weigh heavily in the balance when there are witnesses on both sides of the case who will be inconvenienced depending on which forum is selected.  *Id.; AMF, Inc. v. Computer Automation, Inc.* 532 F. Supp. 1335, 1341 (S.D. Ohio 1982).

Here, defendants rely on the fact that a former employee resides in Minnesota. Plaintiffs contend that they have already traveled to Minnesota to depose other witnesses, and arrangements can be made to have Ms. Pahl to testify at trial by videotape. Because witnesses will be inconvenienced either way, this factor does not weigh in favor of either party.

Location of Documents.  Since documents can normally be easily copied and, when they must be reviewed before copying that review is usually conducted by counsel, the location of documents is frequently only a minor consideration.  *See United States v. Cinemark USA, Inc.,* 66 F. Supp. 2d 881, 890 (N.D. Ohio 1999); *AMF, Inc. v. Computer Automation, Inc.* 532 F. Supp. at 1340 (holding that the volume of documents reviewed was irrelevant "since regardless of trial location, the same files and

15

documents will have to be examined"). Given that documents have been produced electronically thus far, this factor does not weigh in favor of either party.

Relative Financial Strength of the Parties. The relative financial strength of the parties and their respective abilities to conduct the litigation in the original forum and the proposed transferee forum are factors relevant to a decision. *AMF, Inc. v. Computer Automation, Inc.* 532 F. Supp. at 1344; *Galonis v. National Broadcasting Co., Inc.,* 498 F. Supp. 789, 793 (D.N.H. 1980); *Garrett v. Ruth Originals Corporation,* 456 F. Supp. 376, 385 (S.D. Ohio 1978); *AAMCO v. Bosemer,* 374 F. Supp. 754, 757 (E.D. Pa. 1974). Here, there is no evidence that any party is financially incapable of litigating the case either here or in the District of Minnesota, but plaintiffs would be forced to hire additional counsel if the case were transferred to Minnesota.

Relative Docket Congestion. Relative docket congestion is a factor. *Gulf Oil,* 330 U.S. at 508. Statistics found in the *Federal Court Management Statistics* 2014, U.S. District Court Judicial Caseload Profile indicate that there were 435 civil case filings per judgeship in the Southern District of Ohio in 2014. The median time from filing to disposition in a civil case was 9.5 months. For the same year, there were 712 civil case filings per judgeship in the District of Minnesota in 2014. The median time from filing to disposition in a civil case was 11.1 months. *See* http://www.uscourts.gov/Statistics/FederalCourtManagementStatistics/district-court s-september-2014.aspx. To the extent that relative docket congestion is considered in balancing the public interests, it weighs slightly in favor of maintaining venue in Ohio**.**

16

Familiarity with Controlling Law.  The familiarity of the judges in the competing forums with the controlling law is not a factor unless the law is "unclear, unsettled, or difficult."  *AMF, Inc. v. Computer Automation, Inc., 523 F. Supp.* at 1346-48. Here, the suit is brought for a breach of contract claim, and both the Court for the District of Minnesota and this Court are equally competent decide the case based on Ohio and federal law.

The factors weigh slightly in favor of maintaining this case in Ohio. Because defendants have failed to demonstrate that the District of Minnesota is a more convenient forum, the Magistrate Judge RECOMMENDS that the motion to transfer be DENIED.

## IV.    Conclusion

For the reasons stated above, the Magistrate Judge RECOMMENDS that defendant LTF Club Operations Company, Inc.'s December 11, 2014 motion to transfer venue (doc. 26) be DENIED.

If any party objects to this Report and Recommendation, that party may, within fourteen (14) days, file and serve on all parties a motion for reconsideration by the Court, specifically designating this Report and Recommendation, and the part thereof in question, as well as the basis for objection thereto.  28 U.S.C. §636(b)(1)(B); Rule 72(b), Fed. R. Civ. P.

The parties are specifically advised that failure to object to the Report and Recommendation will result in a waiver of the right to *de novo* review by the District

Judge and waiver of the right to appeal the judgment of the District Court.  *Thomas v. Arn*, 474 U.S. 140, 150-152 (1985); *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981); *United States v. Sullivan,* 431 F.3d 976, 984 (6th Cir. 2005); *Miller v. Currie,* 50 F.3d 373, 380 (6th Cir. 1995).  Even when timely objections are filed, appellate review of issues not raised in those objections is waived.  *Willis v. Sullivan,* 931 F.2d 390, 401 (6th Cir. 1991).

s/Mark R. Abel
United States Magistrate Judge
