UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION

LAURENCE BARTELL, et al.,

        Plaintiffs,

v.

LTF CLUB OPERATIONS
COMPANY, INC.

        Defendant.

Case No. 2:14-cv-00401
CHIEF JUDGE EDMUND A. SARGUS, JR.
Magistrate Judge Norah McCann King

## OPINION AND ORDER

This matter is before the Court for consideration of Defendant LTF Club Operations Company, Inc.'s ("Life Time") objections to the Magistrate Judge's Report and Recommendation denying Life Time's Motion to Transfer Venue (Doc. 43), Plaintiffs' Motion to Strike Life Time's Surreply in support of its objections (Doc. 51) and Life Time's Motion to Dismiss (Doc. 32). Plaintiffs initiated this suit as current and former members of fitness clubs owned and operated by Life Time. Pursuant to 28 U.S.C. § 1404(a), Life Time seeks to transfer venue to the United States District Court for the District of Minnesota. In further support of its Motion to Transfer Venue, Life Time filed a Surreply (Doc. 50), which Plaintiffs have moved to strike as improper under the Federal Rules of Civil Procedure and this Court's Local Rules. Life Time also moves to dismiss Plaintiffs' claims in their entirety pursuant to Rule 12(b)(6). For the reasons that follow, Plaintiffs' Motion to Strike is **GRANTED,** Life Time's Objections (Doc. 43) are **OVERRULED,** and Life Time's Motion to Dismiss is **GRANTED** in part and **DENIED** in part.

1

## I. BACKGROUND

On March 25, 2014, Plaintiffs initiated this putative class action by filing a Complaint (the "Complaint" or "Compl.") against Life Time in the Court of Common Pleas for Franklin County, Ohio. Defendant was served with the Complaint on March 31, 2014.

Life Time is a Minnesota corporation that owns and operates fitness clubs. Plaintiff Laurence Bartell ("Bartell") is a former member of a Life Time fitness club in Ohio. Plaintiff Jerry Stauffer ("Stauffer") is a current member of a Life Time fitness club in Ohio. Bartell and Stauffer (collectively, "Plaintiffs") alleged violations of the Ohio Prepaid Entertainment Contract Act ("PECA") (O.R.C. § 1345.41 *et seq*); the Ohio Consumer Sales Practices Act ("CSPA") (O.R.C. § 1345.01 *et seq*.); unjust enrichment; and conversion. Compl. ¶ 1.

The Complaint asserted claims on behalf of Ohio classes of all individuals who are former or current members of Life Time's fitness clubs in Ohio. Plaintiffs claimed that Life Time engaged in a "pattern and practice" of failure to include required cancellation terms and conditions in its form contracts, failure to include an easily detachable notice of cancellation, failing to inform buyers of the right to cancel, misrepresenting a buyer's right to cancel and failing to honor cancellation notices. Compl. ¶ 36.

Life Time removed this action to this Court on April 30, 2014, pursuant to the Class Action Fairness Act ("CAFA") (28 U.S.C. §§ 1332, 1441(a), 1441(b), 1453). Life Time subsequently filed a Motion to Dismiss the Complaint on June 4, 2014 (Doc. 8).

On December 1, 2014 and while the Motion to Dismiss was pending, Plaintiffs filed a Motion to Amend/Correct the Complaint (Doc. 25).

On December 11, 2014, Life Time filed a Motion to Transfer Venue (Doc. 26) to the United States District Court for the District of Minnesota, citing the location of the witnesses, the

location of company documents, and the fact that Plaintiffs were no longer in their chosen forum as supporting factors.

On January 5, 2015, the Magistrate Judge granted Plaintiffs' Motion to Amend/Correct the Complaint (Doc. 29). Plaintiffs filed the First Amended Complaint ("FAC") the same day (Doc. 30). The FAC adds claims on behalf of Plaintiffs and a nationwide class of others similarly situated against Life Time for breach of contract; violations of the Electronic Funds Transfer Act (15 U.S.C. § 1693 *et seq*) ("EFTA); fraud, and unjust enrichment. The FAC also amended Plaintiffs' claims brought on behalf of themselves and Ohio classes of others similarly situated to violations of the EFTA, PECA, the CSPA and unjust enrichment. (FAC ¶ 1).

In order to establish a membership at a Life Time fitness club, a consumer must sign a standard form contract called a General Terms Agreement ("GTA"). *Id.* ¶¶ 9-10. The GTA includes authorization for Life Time to collect "joining fees," the first month's Membership Dues, and monthly Membership Dues thereafter via an electronic fund transfer from the member's bank or credit account. *Id.* ¶ 10. "Membership Dues" is a defined term in the GTA under the "Membership Fees" section and "Membership Dues," subsection which states: "This membership's Membership Dues are the sum of the base membership dues and junior member dues listed above." *Id.* ¶ 12. The GTA also enumerates that "The Membership Dues are due and payable in advance on the first of each month that this membership remains in effect. Life Time Fitness reserves the right to determine the amount and terms of payment of Membership Dues." *Id.* ¶ 13.

On a yearly basis starting no later than 2011, Life Time adopted a common policy and practice of increasing Membership Dues. The increased amounts were charged to members' credit and bank accounts. *Id.* ¶ 16.

3

Plaintiff Bartell signed a GTA on or around June 9, 2010 at a Life Time fitness club in Beachwood, Ohio. *Id.* ¶ 21. At the time of the signing, Bartell was not orally informed of his right to cancel the membership for any reason within three days of signing. The GTA neither includes an easily detachable notice of cancellation, nor two copies of a notice of cancellation containing the name of the seller, the address of the seller's place of business and the date of the contract. *Id.* ¶¶ 28-29. Upon execution of the GTA, Life Time charged Bartell a $109.65 joining fee and his first month's Membership Dues. *Id.* ¶¶ 2, 30. Life Time increased Bartell's monthly Membership Dues on at least three occasions—on or around December 1, 2011 by approximately $1.10; on or around December 1, 2012 by approximately $1.11; and on or around November 1, 2013 by approximately $2.28. These increases were charged to Bartell's credit card. *Id.* ¶¶ 26-27. On or around December 7, 2013, Bartell delivered a notice of cancellation of his membership to Life Time. Life Time failed to immediately cancel Bartell's membership, charging him for the month of January 2014 before terminating his membership. *Id.* ¶¶ 31-33.

Plaintiff Stauffer signed a GTA on or around January 15, 2010 at a Life Time fitness club in Dublin, Ohio. *Id.* ¶ 35. The GTA neither includes an easily detachable notice of cancellation nor two copies of a notice of cancellation containing the name of the seller, the address of the seller's place of business and the date of the contract. *Id.* ¶¶ 42-43. Upon execution of the GTA, Life Time charged Stauffer a $101.42 joining fee and his first month's Membership Dues. *Id.* ¶¶ 36, 44. Life Time increased Stauffer's monthly Membership Dues on at least four occasions— on or around December 1, 2011 by approximately $1.06; on or around December 1, 2012 by approximately $1.07; on or around November 1, 2013 by approximately $2.05; and on or around November 1, 2014, by approximately $2.60. These increases were charged to Stauffer's credit card. *Id.* ¶¶ 40-41. Stauffer is still a Life Time fitness member. *Id.* ¶ 34.

4

The FAC alleges that Plaintiffs' claims are typical of the other class members' claims. *Id.* ¶ 48. Plaintiffs seek declaratory, injunctive and monetary relief as well as costs and attorney's fees under Ohio state law. *Id.* at 19.

On January 20, 2015, Life Time filed a Motion to Dismiss the FAC (Doc. 32), pursuant to Rule 12(b)(6), contending that Plaintiffs' Breach of Contract (Count I), EFTA (Count II), Fraud (Count III), PECA (Count IV), CSPA (Count V) and unjust enrichment (Count VI) claims all fail as a matter of law.

On February 23, 2015, the Magistrate Judge issued a Report and Recommendation denying Life Time's Motion to Transfer Venue. The Magistrate Judge found that the factors to be considered under § 1404(a) weighed "slightly in favor of maintaining this case in Ohio." (Rep. and Rec. at 17).

*First* the Magistrate Judge examined the appropriate deference to accord Plaintiffs' choice of Ohio as the forum in which to litigate. The Magistrate Judge noted that the cause of action here has little to do with the forum, as the underlying contracts "were offered, signed and performed in various states, and Minnesota has no more connection to these claims than any other state." *Id.* at 14. Additionally, the Magistrate Judge found that Plaintiffs'' choice of forum is entitled to less weight because the case has been removed out of their chosen forum by the defendants to this Court. However, despite these considerations cutting against complete deference to the Plaintiffs' choice of forum, the Magistrate Judge continued, the fact that this is a proposed class action does not mean that Plaintiffs' choice is entitled to no deference. Thus, the Magistrate Judge concluded that this factor still slightly favors Plaintiffs. *Id.* at 14-15.

*Second*, the Magistrate Judge found that witnesses will be inconvenienced whether the venue transferred to Minnesota or remained in this Court. As a result, the witness convenience factor did not weigh in favor of either party. *Id*. at 15.

*Third*, since the documents in this case have been produced electronically, the location of documents similarly does not weigh in favor of either party, the Magistrate Judge found. *Id*. at 15-16.

*Fourth*, the Magistrate Judge noted that no evidence had been presented that either party is financially incapable of litigating the case in either forum. However, plaintiffs would be forced to hire additional counsel if the case were transferred to the District of Minnesota. *Id*. at 16.

*Fifth*, due to a shorter median disposition time for civil cases in the District of Ohio than in the District of Minnesota, the Magistrate Judge found, "[t]o the extent that relative docket congestion is considered in balancing the public interests, it weights slightly in favor of maintaining venue in Ohio." *Id*. at 16.

*Sixth*, both the Court for the District of Minnesota and this Court are equally competent to decide the case based on Ohio and federal law, the Magistrate Judge observed. Therefore, the factor of familiarity with controlling law also did not weigh in favor of either party. *Id*. at 17.

Ultimately, the *first*, *fourth* and *fifth* factors weighed in favor of maintaining this case in Ohio, the Magistrate Judge found. *Id*. Accordingly, Life Time's Motion to Transfer Venue was denied. *Id*.

On March 3, 2015, Life Time filed timely an Objection to the Magistrate Judge's Report and Recommendation (Doc. 43), asserting that the Magistrate Judge did not sufficiently credit the

6

weight of convenience to non-party witnesses in denying the Motion to Transfer Venue. This Court has considered the matter *de novo. See* 28 U.S.C. § 636(b); Fed. R. Civ. P. 72(b).

On March 27, 2015, Life Time submitted a Surreply in support of its Objection to the Magistrate Judge's Report and Recommendation (Doc. 50). On March 30, 2015, Plaintiffs filed a Motion to Strike this Surreply (Doc. 51) on the grounds that it was filed in violation of the Federal Rules of Civil Procedure and this Court's Local Rules.

## II. VENUE TRANSFER

### A. Plaintiffs' Motion to Strike

Federal Rule of Civil Procedure 72(b)(2), governing written objections to proposed findings and recommendations, does not provide for the filing of a surreply brief in further support of a party's initial filing. This Court's Rules similarly do not provide for the filing of a surreply brief except upon leave of court for good cause shown. *See* S.D. Ohio Civ. R. 7.2(a). In this case, Life Time neither sought leave nor attempted to demonstrate good cause to file its brief.

Life Time should have sought leave to file its Surreply and therefore, its filing was improper. Plaintiffs' Motion to Strike is **GRANTED**. However, in an abundance of caution, this Court has reviewed Life Time's brief and determined that, even if the Court were to consider the Surreply, it would not affect the outcome of the instant motion.

### B. Life Time's Motion to Transfer Venue

A district court has broad discretion in deciding whether to grant or deny a motion to transfer pursuant to § 1404(a). *See Phelps v. McClellan,* 30 F.3d 658, 663 (6th Cir.1994). "In ruling on a motion to transfer under § 1404(a), a district court should consider the private interests of the parties, including their convenience and the convenience of potential witnesses,

7

Case: 2:14-cv-00401-MHW-KAJ Doc #: 58 Filed: 04/14/15 Page: 8 of 19  PAGEID #: 1261

as well as other public-interest concerns, such as systemic integrity and fairness, which come under the rubric of 'interests of justice.'" *Moses v. Business Card Express, Inc.*, 929 F.2d 1131, 1137 (6th Cir.1991) (*quoting Stewart Org., Inc. v. Ricoh Corp.*, 487 U.S. 22, 30, 108 S.Ct. 2239, 101 L.Ed.2d 22 (1988)).

In ruling on a Section 1404(a) motion, the Court need not limit itself to the three statutory factors. *Jumara v. State Farm Ins. Co.*, 55 F.3d 873, 878 (3d Cir.1995); *Tieman v. Victaulic Co.*, No. 06-cv-1036, 2007 WL 397054 (S.D. Ohio Jan. 31, 2007). Rather, the Court should consider "all relevant factors to determine whether on balance the litigation would more conveniently proceed and the interests of justice be better served by transfer to a different forum." *Jumara*, 55 F.3d at 879 (*citing* 15 Charles A. Wright, Arthur R. Miller & Edward H. Cooper, *Federal Practice and Procedure: Jurisdiction and Related Matters* at § 3847 (2d ed.1986)).

The private interests have included:

> plaintiff's forum preference as manifested in the original choice, 1A Pt. 2 *Moore's* P 0.345[5], at 4363; the defendant's preference, 15 *Wright, Miller & Cooper* § 3848, at 385; whether the claim arose elsewhere, *id.* § 3848; the convenience of the parties as indicated by their relative physical and financial condition, *id.* § 3849, at 408; the convenience of the witnesses—but only to the extent that the witnesses may actually be unavailable for trial in one of the fora, *id.* § 3851, at 420–22; and the location of books and records (similarly limited to the extent that the files could not be produced in the alternative forum), *id.* § 3853.

*Jumara*, 55 F.3d at 879. Public interests have included:

> the enforceability of the judgment, 1A Pt. 2 *Moore's* P 0.345[5], at 4367; practical considerations that could make the trial easy, expeditious, or inexpensive, *id.*; the relative administrative difficulty in the two fora resulting from court congestion, *id.*, at 4373; 15 *Wright, Miller & Cooper* § 3854; the local interest in deciding local controversies at home, 1A Pt. 2 *Moore's* P 0.345[5], at 4374; the public policies of the fora, see 15 *Wright, Miller & Cooper* § 3854; and the familiarity of the trial judge with the applicable state law in diversity cases, *id.*

*Jumara,* 55 F.3d at 879–80.

The Court has reviewed Life Time's Motion to Transfer *de novo* and agrees with the findings of the Magistrate Judge as to which factors weigh in favor of each venue. Life Time argues that convenience to the witnesses is entitled to greater weight than other factors. Objections to Magistrate Judge's Report, Doc. 43 ("Objections"), at 4. However, in this case, inconvenience to third party witnesses does not tip the balance in favor of transferring venue. The convenience of the witnesses is only to be considered to the extent that the witnesses may be unavailable for trial. Notably, the convenience of employee witnesses to one of parties "is not a consideration." *Ergsco, LLC v. Evans Garment Restoration LLC*, No. 2:09-cv-358, 2009 WL 3259423, at *6 (S.D. Ohio, Oct. 8, 2009) (citing *Smith v. Kyphon, Inc.*, 578 F. Supp. 2d 954, 963 (M.D. Tenn. 2008). Additionally, it is not all non-party witnesses whose availability and convenience is relevant to the venue inquiry, but rather *essential* non-party witnesses. *Id* (*citing Smith*, 578 F. Supp. 2d at 962). Both parties have identified party (or potential party) witnesses located in both Ohio and Minnesota. Life Time identifies several current and former outside vendors that will "almost certainly" be third-party witnesses in this case. Objections, at 2. "Almost certain" is indeed not "essential" and therefore, the convenience to the witnesses does not tip the balance in favor of transferring venue.

On the other hand, the slight deference afforded to the Plaintiffs' choice of venue—complete deference is not appropriate due to the fact that Plaintiffs seek to certify a nationwide class—the cost to Plaintiffs, who will have to hire counsel in Minnesota should venue transfer, and the relative congestion of the docket in Minnesota weigh slightly in favor of venue remaining in Ohio. Life Time's Motion to Transfer Venue is **DENIED**.

### III. MOTION TO DISMISS

To survive a motion to dismiss for failure to state a claim under Rule 12(b)(6), a complaint must contain sufficient factual matter, accepted as true, to "state a claim to relief that is plausible on its face." *Bell Atlantic Corp. v. Twombly,* 550 U.S. 544, 570, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007); *Ashcroft v. Iqbal,* 556 U.S. 662, 678, 129 S.Ct. 1937, 173 L.Ed.2d 868 (2009) (clarifying the plausibility standard articulated in *Twombly* ). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal,* 556 U.S. at 678. The factual allegations of a pleading "must be enough to raise a right to relief above the speculative level...." *Twombly,* 550 U.S. at 555. "All of the well-pleaded allegations of the complaint must be treated as true, though we need not accept Plaintiff's legal conclusions or draw unwarranted factual inferences." *Thomas v. Publishers Clearing House, Inc.*, 29 F. App'x 319, 322 (6th Cir. 2002).

### A. Breach of Contract

Under Ohio law, there are four main elements of a breach of contract claim: (a) the existence of a contract; (b) performance by the plaintiff; (c) breach by the defendant; and (d) damage or loss to the plaintiff. *Thomas*, 29 F. App'x at 322. Ohio law further provides that "interpretation of written contract terms is a matter of law for initial determination by the court." *Id* (citing *Constr. Interior Sys., Inc. v. Marriott Family Rests., Inc.,* 984 F.2d 749, 754 (6th Cir.1993)).

Reading all well-pleaded allegations of the Plaintiffs as true, the Complaint fails to set forth evidence of a breach of contract claim sufficient to survive a Rule 12(b)(6) motion. The Plaintiffs allege the existence of a membership contract between themselves and Life Time—the

GTA (FAC ¶¶ 21, 35, Exs. A, B), performance of the GTA by Plaintiffs' monthly membership payments (*Id.* ¶¶ 30, 44), Life Time's breach by charging Plaintiffs more than authorized by the terms of the GTA (*Id.* ¶¶ 26, 40); and damages to Plaintiffs (*Id.* ¶¶ 26, 40, 58).

Life Time asserts that Plaintiffs' claim fails because the GTA gives it the right to increase monthly membership dues. The contractual provision on Membership Dues reads:

> This membership's Membership Dues are the sum of the base membership and junior member dues listed above. The Membership dues are due and payable in advance on the first of each month that this membership remains in effect. Life Time Fitness reserves the right to determine the amount and terms of payment of Membership Dues.

Plainly read, Life Time has sufficiently reserved the right to increase dues.

Plaintiffs argue that the final sentence of the provision pertains to Life Time's right to determine the amount and terms of payment of dues at the time of the contract signing. However, there would be no need to *reserve* a right to do so. It is a fact, rather than a necessary legal reservation, that Life Time had the right to offer any contract terms it wished with respect to membership dues. Once Plaintiffs assented to the proffered dues and payment terms, it was not necessary for Life Time to reserve its right to have chosen specific dues and payment terms in the first place. Under Ohio law, "courts should not interpret a contract so as to render clauses superfluous." *D.A.B.E., Inc. v. Toledo-Lucas County Bd. Of Health*, 96 Ohio St. 3d 250, 256 (2002); see *also Saunders v. Mortensen*, 101 Ohio St.3d 86, 89, 801 N.E.2d 452 (Ohio 2004) ("We have long held that a contract is to be read as a whole and the intent of each part gathered from a consideration of the whole. If it is reasonable to do so, we must give effect to each provision of the contract.") (citing *Foster Wheeler Enviresponse, Inc. v. Franklin Cty. Convention Facilities Auth.*, 78 Ohio St.3d 353, 361, 678 N.E.2d 519 (Ohio 1997)). Here, the contract terms expressly allow Life Time to determine the amount and payment terms of

11

Membership Dues, which includes by way of an increase. To read the contract otherwise, would render the sentence in question superfluous.

Accordingly, Count I is **DISMISSED**.

**B. EFTA**

The parties agree that Plaintiffs' EFTA claim may be dismissed because Plaintiffs did not have Life Time monthly charges withdrawn from a debit card. As a result, Count II is **DISMISSED**.

**C. Fraud**

Life Time moves to dismiss Plaintiffs' fraud claim on the basis that it lacks specificity required by Fed. R. Civ. P. 9(b).

Rule 9(b) provides that "[i]n all averments of fraud ... the circumstances constituting fraud ... shall be stated with particularity." To satisfy this requirement, the Plaintiff must allege the time, place and content of the allegedly false representation and identify the parties who allegedly participated in the fraud. *Ullmo v. Gilmour Academy,* 273 F.3d 671, 678 (6th Cir. 2001).

Under Ohio Law, the elements of fraud include:

(a) a representation or, where there is a duty to disclose, concealment of a fact,

(b) which is material to the transaction at hand,

(c) made falsely, with knowledge of its falsity, or with such utter disregard and recklessness as to whether it is true or false that knowledge may be inferred,

(d) with the intent of misleading another into relying upon it,

(e) justifiable reliance upon the representation or concealment, and

(f) a resulting injury proximately caused by the reliance.

*Burr v. Bd. of County Comm'rs of Stark County,* 23 Ohio St. 3d 69, 491 N.E.2d 1101, 1105 (Ohio 1986) (internal quotations omitted).

Plaintiffs' fraud claims are premised on the same factual allegations as their breach of contract claim. Plaintiffs claim that Life Time "represented to Plaintiffs that it would collect Membership Dues in the amount set forth in the GTA." FAC ¶ 72. Plaintiffs further contend that Life Time "made this representation at the time Plaintiffs signed the GTA." FAC ¶ 73.

Plaintiffs fail to satisfy the Rule 9(b) pleading requirements. The contract itself specified that Life Time reserved the right to set the amounts of Membership Dues and Plaintiffs have failed to identify any Life Time employee who represented to them that the Membership Dues would never increase. This lack of specificity is fatal to Plaintiffs' fraud claim.

In considering whether the defect may be cured by amendment of the pleadings, the Court notes that neither party disputes the existence of the GTA. Under Ohio law, the existence of a contract excludes the opportunity to present the same case as a tort claim. *Wolfe v. Continental Cas. Co.*, 647 F.2d 705, 710 (6 th Cir. 1981); *Corporex Dev. & Constr. Mgt., Inc. v. Shook, Inc.*, 106 Ohio St. 3d 412, 835 N.E.2d 701, 704 (2005) ("When a duty in tort exists, a party may recover in tort. When a duty is premised entirely upon the terms of a contract, a party may recover based upon breach of contract."). Here, Plaintiffs' fraud claim is based upon an alleged failure by Life Time to perform its contractual duties. Count III is, therefore, **DISMISSED**.

### D. Ohio Consumer Sales Practices Act & Ohio Prepaid Entertainment Contract Act

Plaintiffs allege that Life Time violated the CSPA and the PECA by improperly charging monthly dues and fees, failing to include required cancellation terms and conditions, cancellation

notices, and to orally inform Plaintiffs of their right to cancel, failing to honor cancellation notices and failing to provide proper refunds.

The CSPA protects consumers from unfair, deceptive or unconscionable sales practices as defined in Ohio Rev. Code §§ 1345.02 and 1345.03. The PECA enumerates additional standards applicable to prepaid contracts for services throughout a number of industries, including health spas and gymnasiums. Plaintiffs allege that, pursuant to O.R.C. § 1345.48, allowing individuals to seek relief under the CSPA's private remedy statute, Life Time's actions constitute deceptive acts and practices in violation of O.R.C. § 1345.02.

### 1. The Applicability of PECA to the Contracts at Issue

The PECA defines a "prepaid entertainment contract" as a "contract under which the buyer of a service pays for or becomes obligated to pay for service prior to the buyer's receipt or enjoyment of any or all of the service." O.R.C. § 1345.41(A)(4). Life Time argues that Plaintiffs' claims under the PECA fail because the contracts at issue here do not fall within the requisite definition of "prepaid entertainment contracts." The Court does not agree.

Plaintiffs assert that the GTAs constitute prepaid contracts because payment was collected in the form of joining fees and first month's Membership Dues upon contract execution. Life Time responds that the GTAs allow Plaintiffs to use Life Time's facilities immediately upon said payment and further payment was not collected until the next month, at which time Plaintiffs would receive access to the facilities for that month. Therefore, no portion of the contract price was paid prior to the date on which the facilities that are the subject of the contract became available for use by the Plaintiffs.

Neither Plaintiffs nor Life Time have pointed to the availability of governing case law. However, the statute itself identifies certain industries to which it applies, including "for the use

of the facilities of a health spa, gymnasium, or other facility used for any purpose described in this division, or for membership in any group, club, association, or organization formed for any purpose described in this division." O.R.C. 1345.41(A)(4). It is clear, then, that the PECA explicitly applies to gym memberships. Neither party disputes that it would be applicable had Plaintiffs prepaid for Life Time membership for a longer duration—one year, for example. Therein lies the crux of the issue with Life Time's argument that the PECA does not apply to month-to-month memberships. The statute itself contains no durational specification on the term that must be prepaid in order for the contract to fall within its purview.

Additionally, the PECA has been held by Ohio courts to apply to contracts for a dating service, as well as for dance lessons. *Costello v. Great Expectations, Inc.*, No. 2006 CVI 015549 (PIF #10002624); *Brown v. Silzar, Inc. dba Fred Astaire Dance Studio*, Case No. 6810 (2nd App. Dist. 1981 (PIF #10000402). While this Court must exercise caution in comparing cross-industry cases for the purposes of notice to the defendant of a CSPA violation under *Marrone* (*see infra*, at II.D.2), the Ohio Supreme Court has issued no such directive on the applicability of the PECA to a contract in the first instance. A dating service and a dance studio wherein a consumer purchases a membership or services to be used at a future date are the same in function as a fitness center selling memberships to be utilized through a future date. Here, the monthly fee is assessed in advance of the month for which services are purchased. To hold otherwise would mean vendors could simply change the form in which services were sold—for example, a contract for a month of dance lessons only offered once a week rather than a package of four dance lessons to be used at a mutually convenient time—in order to render the PECA inapplicable. This Court will not read such a contradiction in terms into the statute. The PECA is applicable to the GTAs.

### 2. Notice that Life Time's Acts Violate the CSPA

A class action may lie under the CSPA only "when a supplier acted in the face of prior notice that its conduct was deceptive or unconscionable." *Marrone v. Phillip Morris USA, Inc.*, 110 Ohio St. 3d 5, 8, 850 N.E.2d 31 (2006) (citing O.R.C. § 1345.09(B)). Prior notice may be in the form of: (1) a rule adopted by the Attorney General, or (2) an Ohio court decision determining the practice to be deceptive or unconscionable. *Id.* The Ohio Supreme Court has further enumerated, "Cases that involve industries and conduct very different from the defendant's do not provide meaningful notice of specific acts or practices that violate the CSPA." *Id.* at 9. A defendant's alleged violation must be "substantially similar to an act or practice previously declared to be deceptive by one of the methods identified in [O].R.C. 145.09(B)." *Id.* at 6.

Life Time asserts that Plaintiffs' CSPA and PECA claims fail for lack of notice because Plaintiffs cite consent judgments, which do not serve as prior notice for CSPA claims, and the remaining cases cited by Plaintiffs are inapposite.

Plaintiffs cite six state court decisions made available for public inspection by the Attorney General through the Ohio Public Inspection File ("PIF") in support if their claim that Life Time has received prior notice that its acts were deceptive or unconscionable. Three are consent judgments, not reflecting adjudication by the court as to underlying issues. It is a consensus of sister courts, with which this Court agrees, that such judgments are insufficient to satisfy the CSPA notice requirement. *Gascho v. Global Fitness Holdings, LLC*, 918 F. Supp. 2d 708, 715-16 (S.D. Ohio 2013); *Pattie v. Coach, Inc.*, 29 F. Supp. 3d 1051, 1056-7 (N.D. Ohio 2014). Therefore, three of the Plaintiffs' citations do not constitute adequate notice under O.R.C. § 1345.09(B).

Plaintiffs cite three additional PIFs as comprising adequate notice under the CSPA. The first is *Celebrezze v. Peer, dba Olympian Health & Racquet Club*, Case No. 81C-04-1742 (PIF #100000075), in which the plaintiffs were granted summary judgment on CSPA and PECA claims. The Court finds that the actions of the defendants in *Celebrezze* were not substantially similar to the actions alleged in this case to satisfy *Marrone*. In *Celebrezze*, the defendants failed to honor cancellation of contracts due to disability in accordance with O.R.C. § 1345.42. Here, cancellation due to disability is not alleged and therefore a failure to honor cancellation due to disability is also not at issue.

The remaining two cases, *Costello* and *Silzar* provide notice to Life Time that some of its alleged conduct violates the CSPA. In both cases, defendants were found to have failed to orally inform plaintiffs of their cancellation rights and failed to include an easily detachable notice of cancellation or two properly completed notices of cancellation. In *Silzar*, the defendants were also found to have failed to honor a valid cancellation notice in violation of O.R.C. § 1345.44(D)(4). Life Time contends that the industry differentiation—a dating service and dance lessons—are fatal to the Plaintiffs' assertion that Life Time had notice its acts were in violation of the CSPA. The court does not agree. Under *Marrone*, the inquiry into sufficient similarities does not halt at the industries involved, but proceeds onward to the similarities of the defendants' conduct. Here, the acts alleged are the same and the industries are: (1) services; (2) provided over an extended period of time; (3) with monthly payments. These are not so different as to negate notice to Life Time. For these reasons, Life Time's motion for dismissal of Counts IV and V is not granted, but Plaintiffs' class claims[1] are limited to its allegations that Life Time failed to honor a valid cancellation notice under O.R.C. § 1345.44(D)(4), failed to include an

---

[1] The Court notes that a Motion for Class Certification (Doc. 46) is pending before this Court. Briefing on the Motion is not yet complete and this opinion should not be read to affect the outcome. In other words, if Plaintiffs are able to certify a class, they may move forward with the claims specified above.

easily detachable notice of cancellation, failed to include two properly completed notices of cancellation and failed to orally inform of cancellation rights at the time Plaintiffs signed the contract.

### E. Unjust Enrichment

Finally, Life Time moves for dismissal of the Plaintiffs unjust enrichment claims.

"Unjust enrichment is an equitable doctrine to justify a quasi-contractual remedy that operates *in the absence of an express contract or a contract implied in fact* to prevent a party from retaining money or benefits that in justice and equity belong to another." *Beatley v. Beatley,* 160 Ohio App. 3d 600, 828 N.E.2d 180, 192–93 (2005) (quotations and citations omitted) (emphasis added). Thus, "Ohio law is clear that a plaintiff may not recover under the theory of unjust enrichment or quasi-contract when an express contract covers the same subject." *Lehmkuhl v. ECR Corp.,* No. 06 CA 039, 2008 WL 5104747, at *5 (2008).

Plaintiffs' claims are based upon an express contract—the GTA. The facts, therefore, do not support a claim for unjust enrichment because the subject of the amount and terms of membership dues was covered by the GTA. For these reasons, Count V is **DISMISSED**.

### IV.

For the reasons stated above, Plaintiff's Motion to Strike Life Time's Surreply (Doc. 51) is **GRANTED**; Life Time's Objections to the Magistrate Judge's Report and Recommendation Denying Life Time's Motion to Transfer Venue (Doc. 43) are **OVERRULED**; the Report and Recommendation denying Life Time's Motion to Transfer Venue (Doc. 39) is **ADOPTED**; and Life Time's Motion to Dismiss (Doc. 32) is **GRANTED** in part and **DENIED** in part with prejudice.

**IT IS SO ORDERED.**

4-14-2015
DATE

EDMUND A. SARGUS, JR.
UNITED STATES DISTRICT CHIEF
JUDGE