# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF OHIO
## EASTERN DIVISION

| | | |
|---|---|---|
| **LAURENCE BARTELL, et al.** | ) | **CASE NO.  2:14-cv-00401** |
| | ) | |
| **Plaintiffs,** | ) | **JUDGE SARGUS** |
| | ) | |
| vs. | ) | **MAGISTRATE JUDGE KING** |
| | ) | |
| **LTF CLUB OPERATIONS COMPANY, INC.** | ) | |
| | ) | |
| | ) | **DEFENDANT'S MOTION TO** |
| **Defendant.** | ) | **CERTIFY QUESTIONS TO** |
| | ) | **THE OHIO SUPREME COURT** |
| | ) | |

Pursuant to the Ohio Supreme Court Practice Rule 18.1, defendant LTF Club Operations Company, Inc. ("Life Time") hereby moves the Court to certify the following questions to the Ohio Supreme Court:

1. Does the Ohio Prepaid Entertainment Contract Act, Revised Code 1345.41 et seq. (the"PECA"), apply to month-to-month contracts, where a member pays only one month's dues in advance and retains the right to cancel the contract at any time by delivering one month's notice?

2. Was there adequate notice in the Ohio Attorney General's Office Public Inspection File under R.C. 1349.09(B), that the PECA applies to month-to-month contracts such that Life Time can be sued in a class action for violating the PECA?

Certification is appropriate because these issues raise novel questions of Ohio law that are potentially dispositive of all remaining claims in this litigation.  Judicial economy, as well as issues of comity and federalism, will be served by the Ohio Supreme Court's consideration of the novel statutory issues presented in this case.

00020025-1

Respectfully submitted,

/s/ Christopher C. Koehler

| | |
|---|---|
| Christopher C. Koehler | (0059384) |
| TRIAL COUNSEL | |
| Gregory R. Farkas | (0069109) |
| Lindsey Carr Siegler | (0074182) |

FRANTZ WARD LLP
2500 Key Center
127 Public Square
Cleveland, Ohio 44114-1230
216-515-1660 – Telephone
216-515-1650 – Facsimile
ckoehler@frantzward.com
gfarkas@frantzward.com
lcarrsiegler@frantzward.com

*Attorneys for Defendant*
*LTF Club Operations Company, Inc.*

00020025-1

2

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF OHIO**
**EASTERN DIVISION**

| | | |
|---|---|---|
| **LAURENCE BARTELL, et al.** | ) | **CASE NO.  2:14-cv-00401** |
| | ) | |
| **Plaintiffs,** | ) | **JUDGE SARGUS** |
| | ) | |
| **vs.** | ) | **MAGISTRATE JUDGE KING** |
| | ) | |
| **LTF CLUB OPERATIONS** | ) | |
| **COMPANY, INC.** | ) | **MEMORANDUM IN SUPPORT OF** |
| | ) | **DEFENDANT'S MOTION TO** |
| **Defendant.** | ) | **CERTIFY QUESTIONS TO** |
| | ) | **THE OHIO SUPREME COURT** |

## INTRODUCTION

All of the remaining claims in this litigation are premised on Life Time's alleged

technical violations of the Ohio Prepaid Entertainment Contract Act, Ohio Revised

Code 1345.41 et seq. (the "PECA").  However, the PECA does not apply to the contracts at

issue.  Plaintiffs did not enter typical "prepaid contracts" as defined by the statute.  There is no

single "purchase price" in the contracts consisting of the "total cumulative price of a prepaid

entertainment service," as required by the PECA.  Rather, the contracts are month-to-month

agreements that can be voluntarily terminated at any time, for any reason.

As this Court recognized in its April 14, 2005 ruling on Life Time's Motion to Dismiss,

no state or federal court in Ohio has ever held the PECA applies to month-to-month contracts,

where a member pays only one month's dues in advance and retains the right to cancel the

contract at any time by delivering only one month's notice.  (ECF #58, Opinion and Order at 14)

("Neither Plaintiffs nor Life Time have pointed to the availability of governing case law")). Life

Time submits that the PECA was intended to apply to *long-term* commitments where customers paid for services before they used them and had no ongoing right of termination.  The provisions of the PECA simply do not make sense when applied to the month-to-month contracts at issue, particularly in light of the express legislative intent on which the PECA is based.  For this reason, Life Time respectfully requests certification to the Ohio Supreme Court of the questions set forth below.

## LEGAL STANDARD

Under the Ohio Supreme Court Practice Rule 18.1, a question is appropriate for certification to the Ohio Supreme Court, if (1) it "may be determinative of the proceeding" and (2) it presents a question of Ohio law "for which there is no controlling precedent in the decisions of [the Ohio] Supreme Court." *Id.*; *see also American Booksellers Found. for Free Expression v. Cordray*, 560 F.3d 443, 446 (6th Cir. 2009).  "Federal courts have utilized this Rule freely when the moving party demonstrates both the determinative and lack of controlling precedent prongs of the Rule." *Mohat v. Mentor Exempted Village School Dist. Bd. of Ed.*, 2010 U.S. Dist. LEXIS 11614, *2 (N.D. Ohio 2010).

Certification is favored by both the Ohio Supreme Court and the United States Supreme Court as a way to promote state sovereignty and avoid friction between state and federal courts. *Scott v. Bank One Trust Co.*, 62 Ohio St. 3d 39, 44 (1991) ("To the extent that a federal court applies different legal rules than the state court would have, the state's sovereignty is diminished; …the federal court has made state law.  From the state's viewpoint, losing part of its sovereignty is no small matter, especially since a federal court's error may perpetuate itself in state courts until the state's highest court corrects it."); *Arizonans for Official English v. Arizona*, 520 U.S. 43, 79 (1997) ("Speculation by a federal court about the meaning of a state statute in the absence

of prior state court adjudication is particularly gratuitous when…the state courts stand willing to address questions of state law on certification from a federal court."). By permitting state courts to determine "novel" or "unsettled" questions of state law, certification promotes the principles of federalism and comity and provides for the effective and efficient resolution of cases. *See American Booksellers*, 560 F.3d at 446 ("The United States Supreme Court also recognizes that 'certification of novel or unsettled questions of state law for authoritative answers by a State's highest court…may save time, energy, and resources and help build a cooperative judicial federalism.'") (*quoting Arizonans for Official English*, 520 U.S. at 77).

Specifically, "[w]here statutory interpretation is at issue, the United States Supreme Court has instructed the federal courts to employ certification or abstention if the 'unconstrued state statute is susceptible of a construction by the state judiciary which might avoid in whole or in part the necessity for federal constitutional adjudication, or at least materially change the nature of the problem.'" *Planned Parenthood Cincinnati Region v. Strickland*, 531 F.3d 406, 410-411 (6th Cir. Ohio 2008) (*quoting Bellotti v. Baird*, 428 U.S. 132, 146-47 (1976) (internal quotations omitted)). In *Bellotti*, the Court held that the district court erred in failing to order certification and choosing instead to enjoin a Massachusetts statute governing the ability of minors to consent to an abortion. *Id*. at 151. The Court stressed that certification should have been ordered by the lower court because the state law was unclear, and there was no doubt that "adoption of appellant's interpretation would at least materially change the nature of the problem." *Id*. at 147 (internal quotations omitted). Pursuant to this well-settled standard, certification is both necessary and appropriate in this case.

**QUESTIONS TO BE CERTIFIED**

1. Does the PECA apply to month-to-month contracts where a member pays only one month's dues in advance and retains the right to cancel the contract at any time by delivering one month's notice?

2. Was there adequate notice under the Ohio Consumer Sales Practices Act that the PECA applies to month-to-month contracts such that Life Time can be sued in a class action for violating the PECA?

**DISCUSSION**

As the Court recognized in its ruling on Life Time's Motion to Dismiss, there is no governing Ohio authority regarding the application of the PECA to month-to-month contracts. (ECF #58, Opinion and Order at 14.)  The Ohio Supreme Court has never addressed the PECA in the almost 40 years the Act has been in place.  Certification of the unique statutory questions presented in this case will allow the Ohio Supreme Court to issue an authoritative statement of Ohio law relating to 1345.41 and 1349.09, so that the numerous fitness clubs (and other entities offering what can be construed as "prepaid" entertainment) which operate in Ohio and utilize month-to-month contracts can ensure their contracts conform to Ohio law.

**A.    The questions proposed for certification may dispose of this action.**

If the Ohio Supreme Court rules that the PECA does not apply to month-to-month contracts which a member can terminate at any time, both Plaintiffs' individual claims and the class action claims under the PECA will be dismissed.  Because this Court previously dismissed Plaintiffs' breach of contract, fraud and unjust enrichment claims, such a ruling will dispose of the entire action.  Even if the Ohio Supreme Court were to rule that the PECA does apply to month-to-month contracts, it could nevertheless rule there was inadequate notice that Life Time's conduct constituted a violation of the Ohio Consumer Sales Practices Act (the "CSPA).

Such a ruling would significantly streamline the issues in this litigation, precluding the class action claims and leaving only Plaintiffs' individual PECA claims.

Plaintiffs' claims hinge on whether the PECA applies to the month-to-month contracts. The PECA sets forth specific standards applicable to prepaid entertainment contracts, which are defined as "a contract under which the buyer pays for or becomes obligated to pay for the service prior to the buyer's receipt of or enjoyment of any or all service…." R.C. 1345.41(A).  The PECA further defines the purchase price as used in the Act as "the *total cumulative price* of a prepaid entertainment service, whether under single or multiple contracts, including all interest and service charges." R.C. 1345.41(B) (emphasis added).

All of Plaintiffs' claims are premised on alleged technical violations of the PECA. However, Plaintiffs did not enter typical "prepaid contracts" as defined by the statute.  There is no single "purchase price" in the contracts consisting of the "total cumulative price of a prepaid entertainment service" as required by the PECA.  Rather, the contracts are month-to-month agreements that can be voluntarily terminated at any time for any reason.  The PECA was intended to apply to *long-term* commitments where customers paid for services before they used them and had no right of termination.  The provisions of the PECA simply do not make sense when applied to the month-to-month contracts at issue, particularly in light of the express legislative intent on which the PECA is based.

The Ohio Supreme Court has never interpreted the PECA, and certainly never explained how the forty year old Act which refers to service by telegraph is to be applied to electronically signed documents and providing copies of documents by electronic mail.  The Court should be given the opportunity to provide guidance on how the PECA applies to modern business practices.

However, even if the Ohio Supreme Court were to hold the PECA does apply to month-to-month contracts, it could nevertheless determine Life Time did not have adequate notice that its technical violations of the PECA constituted a violation of the CSPA which could pave the way for a class action.  Although class actions are authorized for violations of the CSPA, they are limited.  A "consumer may qualify for class-action status only when a supplier acted in the face of prior notice that its conduct was deceptive or unconscionable." *Marrone v. Philip Morris USA, Inc.*, 110 Ohio St. 3d 5, 2006-Ohio-2869, 850 N.E.2d 31, 34 (2006).  This notice must take a certain form.  A class action for a violation of the CSPA is available only if: (1) "the violation is an act or practice that was declared to be deceptive or unconscionable by a rule adopted by the [Ohio] Attorney General before the consumer transaction on which the action is based," or (2) "the violation is an act or practice that was determined by a court to violate the CSPA and the court's decision was available for public inspection" by the Ohio Attorney General under Ohio R.C.1345.05(A)(3).  *Marrone*, 850 N.E.2d at 33 (citing R.C. 1345.09(B)).

In each of the cases cited by Plaintiffs, the application of PECA was undisputed, unlike in this action.  None of the cases cited by Plaintiffs (1) involve month-to-month contracts, (2) contracts that allowed for termination without charge for a longer period (almost five times longer) than required by Ohio law (14 days vs. 3 days), (3) contracts that allowed for termination without charge at any time during the pendency of the month-to-month membership (4) contracts that allowed for written termination notice to be provided in person or by certified mail to the member's club or; (5) contracts that contained an express provision acknowledging that the contracts had been agreed to and provided to the Plaintiffs.  When the totality of the circumstances is properly considered, there is no judicial determination that provides Life Time sufficient notice that its alleged conduct was improper to support a class action under R.C.

1345.09(B).  Should the Ohio Supreme Court agree, Plaintiffs' class claims under the PECA will be dismissed, and this litigation will be significantly simplified.

Accordingly, because a ruling by the Ohio Supreme Court could dispose of or significantly limit the claims in this litigation, certification is appropriate.

**B.      There is no controlling precedent from the Ohio Supreme Court.**

No state or federal court has addressed whether the PECA applies to month-to-month contracts where only one month's dues is paid in advance and where the member retains the right to terminate at any time.  Nor has any federal or state court addressed whether there was adequate notice under the CSPA that the PECA applied to month-to-month contracts such that Life Time could be sued in a class action for violating the PECA.  Such a complete lack of guiding precedent has often been grounds for certification.  *See, e.g., Albrecht v. Treon*, 617 F.3d 890, 892 (6th Cir. 2010) ("As this was a question of first impression in Ohio, the district court certified the question to the Ohio Supreme Court."); *American Booksellers Found. for Free Expression v. Cordray*, 560 F.3d 443, 446 (6th Cir. 2009) (*sua sponte* certifying question to the Supreme Court given the "lack of authoritative state-court construction"); *Planned Parenthood Cincinnati Region v. Strickland*, 531 F.3d 406, 410-11 (6th Cir. 2008) ("the heart of this appeal is the interpretation of a novel and previously uninterpreted state statute"); *HoneyBaked Foods, Inc. v. Affiliated FM Ins. Co.*, 2011 U.S. Dist. LEXIS 27289 (N.D. Ohio 2011) (certifying a question of state law on the reasonable expectations doctrine "for which there is no controlling precedent"); *Lebeau v. Lembo Corp.*, 2007 U.S. Dist. LEXIS 15881 (N.D. Ohio 2007) (certifying several novel questions, including whether Ohio's statute of repose violated the Retroactivity Clause of the Ohio Constitution).

*Anderson v. Barclays Capital Real Estate, Inc*., 2010 U.S. Dist. LEXIS 68327, \*23-26 (N.D. Ohio June 18, 2010), is directly on point.  In that case, the borrower alleged that the mortgage servicer misapplied certain payments and failed to account for $ 2,500 of her payments.  Although the court held that the borrower adequately alleged that the servicer's actions violated the unfair or deceptive or unconscionable prongs of the CSPA, the court withheld ruling on whether the CSPA covered mortgage servicers pending briefing by the parties and possible certification of this issue to the state supreme court.  The court noted that, although R.C. 1345.01(A) previously excluded the transactions by "dealers in intangibles" (presumably including mortgage servicers), in 2007 the statute was amended to provide that "transactions in connection with residential mortgages between loan officers, mortgage brokers, or nonbank mortgage lenders and their customers" are not excluded from the OCSPA.  The court certified the statutory question to the Ohio Supreme Court, explaining:

> Relying on statutory language, legislative history, and pending legislation, defendant argues that OCSPA clearly does not apply as it is not a "supplier" nor are its dealing with plaintiff "consumer transactions."
>
> In response, and relying on statutory language, statutory interpretation principles, an interpretation of legislative history contrary to defendant's, and the fact that the Ohio Attorney General has filed cases alleging violations of the OCSPA against mortgage servicers, plaintiff argues that OCSPA clearly applies.
>
> Neither party, however, points to any binding Ohio authority interpreting whether the statute applies to mortgage servicers.
> . . .
> *Because the application of the statute is primarily a question of Ohio statutory interpretation and legislative intent, and no binding authority exists on the issue*, I anticipate, on further consultation with the parties, certifying this question to the Ohio Supreme Court for determination.  See Ohio Supreme Ct. Rule of Prac. XVIII.

*Id.* at \*23-27 (emphasis added).

The same result is warranted here.  No court in Ohio has ever considered the applicability of the PECA (or prior notice of that applicability) to "pay as you go" contracts.  Given the lack of controlling precedent, as well as the legislative history which implies the PECA was not intended to govern month-to-month agreements, a definitive ruling by the Ohio Supreme Court is necessary to resolve this state law issue.  Because the PECA claim in this case is an issue of first impression, certification is appropriate.

## CONCLUSION

For all the foregoing reasons, Life Time respectfully requests that the Court certify the proposed questions to the Ohio Supreme Court.

Respectfully submitted,

/s/ Christopher C. Koehler

Christopher C. Koehler          (0059384)
TRIAL COUNSEL
Gregory R. Farkas              (0069109)
Lindsey Carr Siegler          (0074182)

FRANTZ WARD LLP
2500 Key Center
127 Public Square
Cleveland, Ohio 44114-1230
216-515-1660 – Telephone
216-515-1650 – Facsimile
ckoehler@frantzward.com
gfarkas@frantzward.com
lcarrsiegler@frantzward.com

*Attorneys for Defendant*
*LTF Club Operations Company, Inc.*

## <u>CERTIFICATE OF SERVICE</u>

I do hereby certify that, on this 28th day of April, 2015, a copy of the foregoing was filed electronically with the Federal Court.  Notice of this filing will be sent to all parties by operation of the Court's electronic filing system.


/s/ Christopher C. Koehler
One of the Attorneys for Defendant
LTF Club Operations Company, Inc.

00020025-1