**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF
OHIO
EASTERN DIVISION**

| | | |
|---|---|---|
| **LAURENCE BARTELL**, *et al.*, | : | |
| | : | Case No. 2:14-cv-00401 |
| Individually and on behalf of all | : | |
| others similarly situated, | : | Judge Michael H. Watson |
| | : | |
| *Plaintiffs*, | : | |
| | : | |
| v. | : | |
| | : | |
| **LTF CLUB OPERATIONS COMPANY,** | : | |
| **INC.**, | : | |
| | : | |
| *Defendant*. | : | |

### PLAINTIFFS' MOTION FOR CLASS REPRESENTATIVE  SERVICE AWARD AND CLASS COUNSEL'S ATTORNEYS' FEES AND COSTS.

Pursuant to Fed. R. Civ. P. 23(h) and 54(d)(2), section 5.01 of the Settlement Agreement (ECF No. 157-1), and this Court's Orders dated February 24, 2020 and May 13, 2020 (ECF Nos. 158 and 165), Class Counsel and Named Plaintiff Laurence Bartell respectfully move this Court for an Order approving the following payments in connection with the Settlement: (1) a Class Representative Service Award in the amount of $20,000; and (2) attorneys' fees and costs in the total amount of $4 million, which includes fees of $3,950,625.57, plus reimbursable out of pocket costs of $49,374.43.   A Memorandum in Support, a Declaration, and detailed time records are attached for the Court's consideration.

1

<u>**MEMORANDUM IN SUPPORT**</u>

**I.      INTRODUCTION**

This Court should grant Plaintiffs' request for a $20,000 Class Representative Service Award for Laurence Bartell ("Bartell") and attorneys' fees and costs of $4 million to Class Counsel ($3,950,625.57 in fees, plus costs of $49,374.43).  Such payments are fair, customary for class actions in this Circuit, and will reasonably compensate Bartell and Class Counsel for the resources, time, and efforts expended for the benefit of the Class.

The Service Award is proper because Bartell incurred significant burden and undertook substantial obligations when he initiated this lawsuit over six years ago. Indeed, Bartell identified the potential issues, contacted Class Counsel to raise his concerns, and actively participated in the litigation for more than six years.  As a direct result of these efforts, the Class will receive Cash or Dues Credit Awards that exceed the amount charged after cancellation.

Likewise, the request for attorneys' fees and costs is reasonable because Class Counsel undertook this litigation on a purely contingent basis; achieved a valuable result for the Class against highly skilled and determined opposing counsel; the case was vigorously litigated, including appeals to the Sixth Circuit; and the fee request is 28.2% of the total Settlement Fund and a 1.9x multiplier on Class Counsel's current lodestar amount.

**II.     BACKGROUND**

**A.      The Litigation**

Plaintiffs were members of Life Time, a health club chain owned and operated by Defendant LTF Club Operations, Inc. ("Defendant or "Life Time").  On March 25, 2014, Plaintiff filed a putative class action against Life Time in the Court of Common Pleas for Franklin County, Ohio, captioned *Laurence Bartell & Jerry Stauffer v. LTF Club Operations*

*Company, Inc.*, No. 14-CV-003206. Life Time removed the case on April 30, 2014, where it was assigned Case No. 2:14-cv-00401. (ECF No. 1). After early discovery and investigation, Plaintiff filed a First Amended Complaint (the "Complaint") on January 5, 2015. (ECF No. 30).

The Complaint alleged, among other things, that Life Time's membership contracts failed to incorporate provisions mandated by Ohio's Prepaid Entertainment Contract Act (O.R.C. §§ 1345.41, et seq.) ("PECA") and Ohio's Consumer Sales Protection Act (O.R.C. §§ 1345.01, et seq.) ("OCSPA"). Specifically, the contract did not provide members with the statutory notices of cancellation and other statutory protections required by PECA. As a result, the Complaint alleges that Life Time further violated PECA by continuing to charge members after they cancelled and by not issuing a refund of dues paid under the contract minus $10 as PECA requires. In addition to these PECA claims, the Complaint also brought claims for breach of contract, unjust enrichment, fraud, and violations of the Electronic Funds Transfer Act. These other claims were dismissed pursuant to Life Time's motion on April 14, 2015. (ECF No. 58).

For more than two years, Class Counsel and Life Time engaged in far-reaching discovery and exhaustive motions practice. This included numerous dispositive and substantive motions; several rounds of written discovery that included production of large amounts of ESI and Life Time's customer database; numerous interviews and depositions of Life Time members, employees, and corporate representatives; and the deposition of two putative class representatives, including Mr. Bartell.

On the PECA and CSPA[1] claims, the Court ultimately denied in part Defendant's motion to dismiss on Article III standing grounds and granted Plaintiff's motion to certify a class of former members who cancelled contracts in Ohio from April 30, 2012 to present. (ECF Nos. 120 and 122, dated August 8, 2016).

---

[1] Pursuant to O.R.C. § 1345.48(A), a violation of PECA also constitutes a violation of the CSPA.

Life Time responded with a flurry of additional motions, including a Motion to Certify Four Questions for Interlocutory Appeal under 28 U.S.C. § 1292(b). (ECF No. 126).  On February 9, 2018, this Court granted that Motion, in part, by certifying two questions:  (1) whether Plaintiff suffered an injury-in-fact sufficient to confer Article III standing; and (2) whether a refund of all dues paid under the GTA minus $10, is an *actual* damage recoverable by a class under PECA/CSPA, or whether it is a *statutory* damage and therefore prohibited in class actions under PECA/CSPA.  (ECF No. 148).

The Sixth Circuit granted LTF's Petition on May 18, 2018.  (ECF No. 152).  Briefing was completed in the Fall of 2018 and oral argument occurred on March 13, 2019.

After oral argument the parties again engaged in settlement discussions and scheduled a fourth mediation.  After mediating with Frank Ray and significant post-mediation discussions, the parties reached an agreement on key settlement terms in the Summer of 2019.  The remaining settlement terms required substantial follow-up.  A full and complete agreement on all terms, including all exhibits to the Settlement Agreement, was finally reached on January, 21, 2020. (ECF No. 157-1) ("Settlement Agreement" or "Agreement").

**B.      Settlement Terms and Conditions.**

Pursuant to the Settlement Agreement, Life Time does not admit liability but to resolve the dispute agrees to pay at least $14 million to resolve this litigation.  Each Class Member may file a Claim Form without providing any information other than their contact information and selecting the Cash Award or Dues Credit Award.  All Settlement Costs, which include Claims Administration fees and costs, the Class Representative Service Award, Class Counsel's attorneys' fees and costs, will be paid from (or, in the case of the Dues Credit Awards, applied toward) the Settlement Fund.  *See* ECF Nos. 157-1 at 8-11.

Importantly, the amounts of the Cash Awards and Dues Credit Awards will be adjusted pro rata to use the entirety of the $14 million Settlement Fund.   The proportion and face amount of the Cash Awards and Dues Credit Awards will be based on the amount of dues that Settlement Class Member paid after giving Life Time notice of cancellation.  By negotiating a minimum $14 million Settlement Fund, Class Counsel ensured that every Class Member would receive more than 2.5 times the amount of their post-cancel dues.  In other words, even assuming a 100% claims rate and further assuming every member selected the Cash Award, each Class Member would still receive more than 2.5 times the amount of money charged after that member submitted his/her cancellation.[2]

As noted in Life Time's prior filings, the Dues Credit was "closely negotiated" by the parties to provide added value to "***all*** Class Members."  *See* ECF No. 162 at 4 (emphasis in original).  Specifically, the face amount of the Dues Credit Award will be three times the face amount of the Cash Award, but for purposes of calculating credit to the $14 million Settlement Fund, Dues Credits will only count at 1.5 times the Cash Award. That means that, for every Dues Credit selected, the face amount of the benefit to the Class increases above the $14 million threshold amount.  As stated by Life Time, "the greater the proportion of Class Members who select Dues Credit Awards, the higher the total value will get."  *Id*. at 5.

While the claims process is not yet complete, early results and projections provided by the Claims Administrator indicate that the total face value of Cash and Dues Credit Awards will exceed $15 million and the *average* Cash Award and Dues Credit Award will exceed $1,100 and $3,300, respectively.   The largest Awards to unnamed Class Members that have filed are estimated to exceed $7,000 in cash and $15,000 in dues credits.  *See* Declaration of Thomas

---

[2]     The *average* amount charged per Class Member after cancellation was just under $60 per member. Assuming this Motion is granted without modification, a 100% claims rate, and 100% Cash Award selection, the *average* Cash Award will exceed $161.

McCormick ("McCormick Dec.") at ¶ 19, (attached as Exhibit 1). Last, while the total value of the Settlement Fund, and appropriate credit for Cash and Dues Awards, was vigorously debated, the parties never discussed attorneys' fees and service awards. *See* McCormick Dec. at ¶ 4; *see also* ECF No. 157-1.

## III. CLASS REPRESENTATIVE SERVICE AWARD.

An incentive award is an effective tool to encourage a class member to become a class representative and to reward their individual efforts taken on behalf of the class. *Estep v. Blackwell*, No. 1:06CV106, 2006 U.S. Dist. LEXIS 89360, at *6 (S.D. Ohio Nov. 29, 2006) (citing *Hadix v. Johnson*, 322 F.3d 895, 897 (6th Cir. 2003)). Federal Courts, including those regularly provide service awards. *Bower v. Metlife,* Case No., 1:09-cv-351, 2012 U.S. Dist. LEXIS 149117, at *25–26 (S.D. Ohio, Oct. 17, 2012); *Bert v. AK Steel Corp.*, Case No. 1:02-cv-467, 2008 U.S. Dist. LEXIS 111711, at *10–11 (S.D. Ohio Oct. 23, 2008).

In determining the amount and propriety of the Award, Court's consider: (1) whether the class representative protected the interests of the class and the actions resulted in a substantial benefit to the entire class; (2) whether the class representatives assumed substantial and indirect financial risk; and (3) the amount of time and effort spent on the litigation. *Enterprise Energy Corp. v. Columbia Gas Transmission Corp.*, 137 F.R.D. 240, 250 (S.D. Ohio 1991).

Incentive awards generally range between $5,000 to $10,000 dollars, but have reached $55,000 in appropriate cases. *Liberte Capital Group v. Capwill*, No. 5:99 CV 818, 2007 U.S. Dist. LEXIS 64869, 2007 U.S. Dist. LEXIS 64869 (N.D. Ohio Aug. 29, 2007)(citing collection of supporting authority).[3]

---

[3] *See also Enterprise Energy Corp.*, 137 F.R.D. at 250 (recovery of $ 56.6 million dollars and six corporate class representatives granted incentive awards of **$50,000 each**); *In re Dunn & Bradstreet Credit Servs. Customer Litig.*, 130 F.R.D. 366, 373–74 (S.D. Ohio 1990) (settlement fund of $18 million dollars and incentive awards to five class

This Court's Service Awards demonstrate a similar range. *See Armond Kelley v. Stanley Steemer Int., Inc., et al*., Case No. 2:09-cv-1173 (S.D. Ohio Sep. 26, 2013) (service award of **$10,000** based on a settlement fund of $650,000); *Connectivity Sys. Inc. v. Nat'l City Bank*, No. 2:08-cv-1119, 2011 U.S. Dist. LEXIS 7829, *39 (S.D. Ohio Jan. 25, 2011) (corporate named-plaintiffs service awards of **$50,000 each** based on a total settlement of $10,000,000.)

Here, Bartell easily satisfies all requirements to be eligible for a sizable Service Award. Bartell is responsible for the initiation of this lawsuit, and he expended significant time and effort, which greatly benefited the Class. At the start, Bartell recognized issues with his Life Time contract and took the initiative to contact Class Counsel. *See* McCormick Dec. at ¶22. From that moment, Bartell was intimately involved in the litigation. He attended numerous and extended meetings with Class Counsel to discuss the claims and the litigation strategy; collected documents and responded to written discovery requests which included pouring through personal files, emails, and bank/credit card records; prepared for and sat for an extended deposition; travelled from Cleveland to Columbus to attend mediation; and closely tracked the docket and engaged in countless calls/emails with Class Counsel to discuss strategy, timing, and settlement. *Id*. From the outset, Mr. Bartell was aware of his fiduciary duties to the Class and acted to protect the interests of the Class during the litigation and settlement. *Id*. Bartell served ably and diligently as a Class Representatives since March 2014, a period of more than six years.

Last, and most important, Bartell's efforts have resulted in a phenomenal result for the Class. The Class will receive a minimum $14 million Settlement Fund, and each Class Member that files a claim will receive a Cash or Dues Credit Award that is greater than the amount of dues collected after that member cancelled. In fact, some Class Members will receive Cash

---

representatives ranged from **$35,000 to $55,000 each**); *Brotherton v. Cleveland*, 141 F. Supp. 2d 907, 914 (S.D. Ohio 2001) (settlement fund of $5.25 million and granting class representative a **$50,000** award).

7

Awards in excess of $7,000 and Dues Credit Awards in excess of $15,000. *See* McCormick Dec. at ¶19. In light of these substantial payments to *unnamed* Class Members, a Service Award of $20,000 to the Class Representative, who initiated this litigation, devoted time and resources to the litigation, and delivered the great result for the Class, is justified and appropriate.

## IV.    CLASS COUNSEL ATTORNEYS FEES.

The Sixth Circuit recognizes two methods for determining the reasonableness of an attorney fee award. One method is the "common fund" approach where the Court awards a percentage of the total benefit conferred upon the class. The second is the lodestar approach, where the Court awards a reasonable fee for the time attorneys have spent prosecuting the case, with or without a multiplier for good results. *See, e.g.*, *Rawlings v. Prudential-Bache Properties, Inc.*, 9 F.3d 513, 516–17 (6th Cir. 1993). "Trial courts within the Sixth Circuit have discretion to calculate an award of attorneys' fees by using either … approach." *In re Cardizem CD Antitrust Litig.*, 218 F.R.D. 508, 532 (E.D. Mich. 2003) (*citing Rawlings*, 9 F.3d at 516–17).

In the Southern District of Ohio, and specifically in common fund settlements like this one, the preferred method is percentage of the fund, with reference to the lodestar and the resulting multiplier. *Swigart v. Fifth Third Bank*, No. 1:11-CV-88, 2014 U.S. Dist. LEXIS 94450, at *5 (S.D. Ohio July 11, 2014); *Rawlings*, 9 F.3d at 515–16.[4] Here, the fee request is fair and reasonable under either approach, but due to the existence of the common Settlement Fund, the Court should use the common fund approach with a lodestar cross-check.

---

[4]     The percentage method directly aligns the interests of the class and its counsel and provides a powerful incentive for efficient prosecution, thereby benefiting both litigants and the judicial system. *See In re Cardinal Health Inc., Sec. Litigs,* 528 F. Supp. 2d 752, 762 (S.D. Ohio 2007) ("[T]he percentage approach encourages efficiency, judicial economy, and aligns the interests of the lawyers with the class."). The percentage-of-fund method also "affords the Court greater flexibility in assuring that Counsel are adequately compensated for the results that they have achieved and the work that they have done, while also protecting the Class' interest in the fund." *Bowling v. Pfizer, Inc.*, 922 F. Supp. 1261, 1280 (S.D. Ohio 1996).

**A.      *The Common Fund.***

Class Counsel requests payment of $4 million from the Settlement Fund; $3,950,625.57 for attorneys' fees and $49,374.43 in reimbursable costs.  The total $4 million amount is 28.5% of the minimum Settlement Fund with the attorneys' *fees* portion ($3,950,625.57) equaling 28.2%.  Once the face value of the Dues Credits are fully calculated, Class Counsel's fee request will be an even smaller percentage of the total settlement value.

### 1.   Less than 30% of the Common Fund is within the customary range.

In selecting an appropriate percentage, the Supreme Court recognizes that an appropriate fee is intended to approximate what counsel would receive if they were bargaining for their services in the marketplace. *Missouri v. Jenkins*, 491 U.S. 274, 285 (1989).  If this were a non-representative action, the customary fee arrangement would be contingent, on a percentage basis, and in the range of 33-1/3% of the recovery. *Blum v. Stenson*, 465 U.S. 886, 903 (1984).

Class Counsel's request for 28.2% of the Settlement Fund is within the customary range. In the Sixth Circuit, "fees range from 20–50%" of the total value of the recovery. *Manners v. Am. Gen. Life Ins. Co.*, No. 3-98-0266, 1999 U.S. Dist. LEXIS 22880, at *88 (M.D. Tenn. Aug. 11, 1999).  Recent decisions from Federal Courts in Ohio further support this range.[5]

---

[5]      *See Kritzer v. Safelite Solutions, LLC,* No. 2:10-cv-0729, 2012 U.S. Dist. LEXIS 74994, at *20 (S.D. Ohio May 30, 2012), at *31 (awarding **52%** of common fund); *Rotuna v. West Customer Mgmt. Group, LLC,* No. 4:09CV1608, 2010 U.S. Dist. LEXIS 58912, at *22–23 (N.D. Ohio June 15, 2010) (award attorneys' fees of **33%** of the total settlement fund); *Brent v. Midland Funding, LLC*, No. 3:11 CV 1332, 2011 U.S. Dist. LEXIS 98763, at *52–54 (N.D. Ohio Sept. 1, 2011) (approving award of attorneys' fees of **29%** of the common fund); *Willis v. Big Lots, Inc., et al.,* Case No. 2:12-cv-604, 2018 U.S. Dist LEXIS 223175, at *3 (S.D. Ohio Nov. 09, 2018) (attorneys' fees of **28%** of the settlement value); *Alexander Brown et al v. Abercrombie & Fitch Co. et al,* No. 2:17-cv-1093, (S.D. Ohio Nov. 07, 2018) and related case *Bojorquez et al v. Abercrombie & Fitch Co. et al*, No. 2:16-cv-551, (S.D. Ohio Nov. 07, 2018) (**30%** of the $25,000,000 common fund); *Thacker v. Chesapeake Appalachia, L.L.C.,* 695 F. Supp. 2d 521, 528 (S.D. Ohio 2010) (awarding fees of **30%** of $28.75 million settlement and explaining "[u]sing the percentage approach, courts in this jurisdiction and beyond have regularly determined that 30% fee awards are reasonable"); *Eshe Fund v. Fifth Third Bancorp,* No. 1:08-cv-421, slip op. (S.D. Ohio Nov. 20, 2013) (awarding **33-1/3%** of $16 million recovery); *Mahoney v. Andrews,* No. 2:03-md-1565, 2009 U.S. Dist. LEXIS 45790, at *16 (S.D. Ohio May 27, 2009) (concluding **30%** of the settlement amount was "within the percentage range that courts have awarded").

### 2. Consideration of the relevant factors.

The touchstone of an appropriate fee in common fund cases is whether the award is reasonable under the circumstances. *See Rawlings*, 9 F.3d at 517. In determining "reasonableness," the Sixth Circuit has identified several factors, including: (a) the value of the benefit rendered, (b) society's stake in rewarding attorneys who produce such benefits in order to maintain an incentive to others, (c) whether the services were undertaken on a contingent fee basis, (d) the value of the services on an hourly basis, (e) the complexity of the litigation, and (f) the professional skill and standing of counsel involved on both sides. *Ramey v. Cincinnati Enquirer, Inc*., 508 F.2d 1188, 1196 (6th Cir. 1974); *see also Smillie v. Park Chem*. Co., 710 F.2d 271, 275 (6th Cir. 1983). Class Counsel's request easily satisfies these factors.

### a. The value of the benefit rendered for the Class.

The most important factor in determining reasonableness of fees is the result obtained. *Citizens Against Pollution v. Ohio Power Co.*, 484 F. Supp. 2d 800, 812 (S.D. Ohio 2007); *Cardinal Health*, 528 F. Supp. 2d at 764 ("benefit of the settlement to the Class" is "the most important factor").

Here, Class Members will benefit from Cash or Dues Credit Awards that far exceed the amount Life Time collected after cancellation. This tremendous value is a testament to Class Counsel's vigorous prosecution of these claims, its careful analysis of the law, and the strong arguments it presented both to the District Court and on appeal at the Sixth Circuit Court of Appeals. Absent Class Counsel's work on this matter, the Class never would have received this award because individuals were unaware of the law and/or the small individual damage claims rendered such action impractical. This result did not come easy, but was only possible after six

10

years of tough litigation, including numerous dispositive motions, hard fought class discovery, class certification, a Sixth Circuit appeal, and four mediations.

In addition to the monetary benefit, Class Counsel has also provided a valuable policy benefit to all consumers.  Indeed, during this lawsuit and continuing to today, Life Time has vigorously argued that PECA does not apply to its contracts and that no violation of Ohio law exists.  But, on April 14, 2015, this Court ruled that, "PECA is applicable to the [contracts]." ECF # 58 at 15.  Forty-three days later, May 27, 2015, Life Time began using new Ohio contracts containing PECA's terms and conditions as requested in Plaintiffs' Complaint.  These new contracts with PECA compliant terms and conditions had never before appeared in Ohio and were one of the remedies sought by Plaintiffs in this litigation.  *See* ECF #67 at 7–8 (requesting "an injunction ordering LTF to amend its GTAs and adopt compliant sales and cancellation policies.").  Accordingly, Plaintiffs and Class Counsel conferred an important non-monetary benefit on all Ohio consumers that further supports the reasonableness of this fee request.[6]

### b.  Society's stake in rewarding attorneys who produce such benefits.

Granting the fee request will ensure that Class Counsel and future counsel are encouraged to take such cases.  "Encouraging qualified counsel to bring inherently difficult and risky but beneficial class action [cases] . . . benefits society." *In re Cardizem CD Antitrust Litig.*, 218 F.R.D. 509, 534 (E.D. Mich. 2003).  "Society has a stake in rewarding attorneys who achieve a result that the individual class members probably could not obtain on their own." *Kritzer v.*

---

[6]     While Class Counsel is not relying on the fee shifting provisions contained in the CSPA and PECA, it is worth noting that under similar circumstances, (*i.e.* a defendant "voluntarily" changing behaviors) counsel was deemed a "prevailing party" making them eligible for attorney's fees under remedial statutes like the CPSA. *See Petro v. Flintkote*, 633 F. Supp. 10 (N.D. Ohio Feb. 25, 1986); *Othen v. Ann Arbor School Bd.*, 699 F.2d 309, 313 (6th Cir. Mich. 1983); *Farrar v. Hobby*, 506 U.S. 103, 111 (U.S. 1992) ("to qualify as a prevailing party . . . [t]he plaintiff must obtain an enforceable judgment against the defendant from whom fees are sought, or comparable relief through a consent decree or settlement.") (internal citations excluded); *Maher v. Gagne*, 448 U.S. 122, 129 (1980) ("We also find no merit in petitioner's suggestion that respondent was not the "prevailing party" within the meaning of § 1988. The fact that respondent prevailed through a settlement rather than through litigation does not weaken her claim to fees.").

*Safelite Solutions, LLC*, No. 2:10-cv-0729, 2012 U.S. Dist. LEXIS 74994 at *29; *see also In re Telectronics Packing Sys.*, 137 F. Supp. 2d 1029, 1043 (S.D. Ohio 2001) ("[a]ttorneys who take class action matters serve a benefit to society and the judicial process by enabling claimants to pool their claims and resources to achieve a result they could not obtain alone.").

Here, the results obtained by Class Counsel will benefit of all consumers.  The Ohio Legislature determined that protecting consumers, and specifically gym members, was important when it passed the CSPA/PECA.  This substantial settlement emphasizes the importance of strict compliance with those requirements and adequate compensation to Class Counsel furthers that public interest.  *See Munger v. Deutsche Bank*, No. 1:11-CV-585, 2011 U.S. Dist. LEXIS 77790, at *31 (N.D. Ohio July 18, 2011) (observing the broad remedial purposes of the Ohio CSPA).

### c.  Whether the services were undertaken on a contingent fee basis.

Class Counsel took this case on a contingent fee basis and assumed the risk that it would yield no recovery.  No compensation has been provided for any time or expenses since this case began.  *See* McCormick Dec. at ¶ 3.

Courts have consistently recognized that the risk of receiving little or no recovery is a major factor in considering an attorneys' fees award.  *See Telectronics Packing,* 186 F.R.D. at 484.  The contingent fee factor "stands as a proxy for the risk that attorneys will not recover compensation for the work they put into a case." *In re Cardinal Health*, 528 F.Supp. 2d at 766. "[S]ome courts consider the risk of non-recovery as the most important factor in fee determination." *Kritzer*, 2012 U.S. Dist. LEXIS 74994, at *29 (*citing In re Cardinal Health*, 528 F.Supp. 2d at 766). Within the set of colorable legal claims, the higher risk of loss supports an opportunity for higher fee.  *In re Trans Union Corp. Privacy Litig.*, 629 F.3d 741, 746 (7th Cir.

2011); *see also O'Keefe v. Mercedes-Benz USA, LLC*, 214 F.R.D. 266 (E.D. Pa. 2003) (determining it is appropriate to pay attorneys several times their hourly fee because of the risk).

Here, Class Counsel accepted the case on a contingent fee basis and advanced all of the time and costs necessary. *See* McCormick Dec. at ¶ 3.  Not only did Class Counsel face all the risks inherent in any litigation, but as argued by Life Time throughout this case, scant case law existed to support several threshold issues such as standing, Plaintiff's ability to bring these claims as a class action, and class damage theories.  In fact, in certifying two questions to the Sixth Circuit Court of Appeals, this Court acknowledged the absence of analogous case law and concluded, "there is substantial grounds for disagreement."  (ECF No. 148 at 20).  This litigation was hard-fought and fraught with risks, yet Class Counsel continued to pour resources into the matter and ultimately negotiated a highly beneficial Settlement.

As stated by one court, "[p]recedent is replete with situations in which attorneys representing a class have devoted substantial resources in terms of time and advanced costs yet have lost the case despite their advocacy." *See In re Xcel Energy, Inc.,* 364 F. Supp. 2d 980, 994 (D. Minn. 2005).  Even plaintiffs who get past summary judgment and succeed at trial may find a judgment overturned on appeal or on a post-trial motion.  This is not an infrequent risk.  The substantial risk borne by Class Counsel for the benefit of the Class serves as another, very significant, factor supporting the reasonableness of Class Counsel's Fee Request.

### d.  The Value of the Services on an Hourly Basis.

When analyzing a percentage award, "the lodestar figure is used to confirm the reasonableness of" the percentage award. *In re Broadwing Inc. ERISA Litig.*, 252 F.R.D. 369, 381 (S.D. Ohio 2006).  As discussed in detail below, Class Counsel's Fee Request is reasonable because it equals a 1.9 multiplier on its *current* lodestar value.

**e.  The Complexity of the Litigation.**

This case involved class allegations affecting more than 60,000 Class Members.  In addition, the claims and damages theories are based on sections of PECA with few reported cases.  Life Time sought to exploit Plaintiff's novel theories by repeatedly raising standing arguments, class certification prerequisites unique to the CSPA, damage calculation barriers, and other unique defense theories such as the voluntary payment doctrine and the rule against one-way intervention.  Class Counsel repeatedly beat back these challenges, but the stakes were significantly raised when this Court certified two threshold questions to the Sixth Circuit Court of Appeals.  Nevertheless, after oral argument and after the fourth mediation in this case, Class Counsel was able to successfully negotiate this favorable settlement.

In short, this case presented a myriad of challenges atypical to a run-of-the-mill consumer case.   This favors awarding Class Counsel its reasonable fee request. *See, e.g.*, *Citizens Against* Pollution, 484 F. Supp. 2d at 814 (recognizing the novelty and complexity of plaintiffs' claims as a factor in determining a reasonable fee award).

**f.  The Professional Skill and Standing of the Attorneys Involved.**

The quality of the representation is best demonstrated by the result achieved; a minimum $14 million Settlement Fund and individual awards that exceed the amount of post-cancellation dues paid.  This substantial recovery is the direct result of the skill, experience, and efforts of Class Counsel who possess significant experience in large class action and consumer litigation. *See* McCormick Dec. at ¶¶ 5–8.   Class Counsel engaged in a concerted effort to obtain the maximum recovery for the Class and committed considerable resources to that end.

The Court should also evaluate the quality of opposing counsel.  The ability to "negotiate a favorable settlement in the face of formidable legal opposition further evidences the

14

reasonableness of the fee award requested." *In re Delphi Corp. Sec.*, 248 F.R.D. 483, 504 (E.D. Mich. 2008). Life Time's counsel were highly skilled and respected advocates at renowned nationwide firms. Opposing counsel is nationally recognized for their consumer practice, class action defense work, and appellate advocacy. This includes attorneys from Franz Ward, LLP; Blackwell Burke P.A.; Faegre Drinker Biddle & Reath LLP; and Baker Hostetler, LLP. All of these law firms are accomplished defense firms, experienced at handling complex litigation, and well known to litigants and judges in the Sixth Circuit. Even Life Time's General Counsel, a highly skilled and tough negotiator, was intimately involved in each of the four mediations and many of the post-mediation calls and emails. In the face of these adversaries, Class Counsel was able to achieve a superb result for the Class.

**B.      The Lodestar Cross-Check**

The lodestar method accounts for the amount of work performed and ensures that counsel is fairly compensated for the results achieved. *Rawlings*, 9 F.3d at 516. "The lodestar method necessitates that the court calculate the reasonable number of hours submitted multiplied by the attorneys' reasonable hourly rates." *In re Telectronics Pacing Sys.*, 137 F.Supp.2d at 1041. After the lodestar is calculated and confirmed, it can be adjusted upward to reflect that the attorneys took the case on a contingent fee basis, were not guaranteed success, and/or to "sustain the incentive of attorneys to continue to represent [their clients] on an inescapably contingent basis." *Florin v. NationsBank of Ga., N.A.*, 60 F.3d 1245, 1247 (7th Cir. 1995).

**1.      Class Counsel reasonably expended over 5,296 hours prosecuting the lawsuit and negotiating the Settlement.**

This litigation has been handled in an efficient, streamlined manner by all involved on Plaintiffs' side. Class Counsel judiciously divided and assigned work in a balanced and efficient manner to accomplish a successful result. *See* McCormick Dec. at ¶¶ 9–17. This matter

involved complex class litigation, novel theories of law and damages, interlocutory appeals, and extensive settlement negotiations. *Cf. Citizens Against Pollution,* 484 F. Supp. 2d at 814 (acknowledging that this Court is not in the business of nor interested in second guessing or micro-managing law firms' business practices). Accordingly, Class Counsel delegated research to younger attorneys with lower billing rates and engaged in consultation with more senior attorneys to obtain specialized expertise and insights for the benefit of the Class. *See* McCormick Dec. at ¶17. All of this work was vital to advancing this litigation and negotiating a successful Settlement. This work spanned more six years and included, among other things:

- Researching and drafting the complaints;
- Interviewing former members of Life Time to learn about the customer experiences and the policies and procedures at issue;
- Serving written discovery which included multiple sets of interrogatories and requests for production;
- Reviewing more than 4,500 documents totaling more than 22,500 pages of information;
- Review and analysis of multiple iterations of Life Time's customer database which contains membership data, billing information, payment history, join dates, cancellation dates, etc. on tens of thousands of members;
- Responding to Life Time's written discovery including the collection and review of years of emails and credit card/bank records;
- Negotiating and resolving discovery disputes, drafting multiple meet and confer communications and attending several discovery conferences with the Court; and
- Preparing for and conducting six depositions of Life Time employees.

In addition, the Parties engaged in an exhaustive Motion practice that addressed and thoroughly briefed almost every element of Plaintiff's claims and many affirmative defenses. These memoranda included not only the underlying Motions listed below, but Responses, Replies, and often times Supplemental Motions, Sur-Responses and Sur-Relies:

- Motions to Dismiss (ECF Nos. 8 and 32);
- Motion to Stay Discovery (ECF No. 12);

- Motion to Transfer Venue (ECF No. 26);
- Motions for Class Certification (ECF Nos. 46 and 67);
- Motion for Entry of Judgment under Rule 54(b) (ECF No. 60);
- Motion to Certify Questions to the Supreme Court of Ohio (ECF No. 61);
- Motion for Reconsideration (ECF No. 125);
- Motions to Dismiss for Lack of Standing (ECF No. 76);
- Cross Motions for Summary Judgment (ECF Nos 90 and 95);
- Motion to Certify Four Questions for Interlocutory Appeal under 28 U.S.C. §1292(b) (ECF No. 126); and
- Sixth Circuit Court of Appeals briefing and oral argument in 2018 and 2019.

Last, this Settlement was only possible after four meaningful mediations and extensive post-mediation negotiation. The first mediation occurred on January 22, 2016, in Minneapolis with the Honorable Arthur J. Boylan serving as the mediator. The second mediation occurred on May 22, 2017, when the Parties met with Magistrate Judge Norah McCann King. On June 14, 2018, the Parties participated in a third mediation with Robert Kaiser through the Sixth Circuit's mediation services. Finally, on June 12, 2019, the Parties met with Columbus mediator Frank Ray. While a resolution was not reached at any of those mediations, extensive post-mediation negotiations, with the assistance of Frank Ray, led to this Settlement Agreement.

During the course of the litigation, Class Counsel maintained contemporaneous and detailed time records, which include a description of hours spent, work performed, and expenses incurred. *See* McCormick Dec. at ¶¶ 9–17. As reflected in those records the total hours reasonably expended by Vorys accomplishing the tasks above is 5,296 for a lodestar value of $2,069,705.15. *Id.* at ¶13. Because these billing records contain significant and repeated discussions of attorney work product they have been minimally redacted to preserve counsel's mental thoughts and impressions. This accounts for the possibility that the Court denies final

17

approval of the Settlement and the case returns to active litigation.  If the Court requests, Class Counsel will provide non-redacted copies for *in camera* review.  *Id*. at ¶12.

### 2.  Class Counsel's Hourly Rates are Reasonable.

In determining a reasonable hourly rate, courts may look at "national markets, an area of specialization, or any other market they believe is appropriate to fairly compensate attorneys." *McHugh v. Olympia Ent.,* Inc., 37 F. App'x 730, 740 (6th Cir. 2002).

Here, Class Counsel's rates range from $180 to $730, with almost all of the work done by Counsel billing less than $550 per hour.  In fact, less than 21 hours of the 5,296 total hours (or .4% of the hours) were billed at a rate higher than $550, and only 337.5 of the hours (or 6% of the hours) were billed at rates higher than $525.  *See* McCormick Dec. at ¶¶ 10, 17.  These represent counsel's standard hourly rates and no adjustments were made for the contingent nature of this engagement.  Any increases in hourly rate represents yearly increases to that attorney's rate that applied generally across all matters.  *Id*. at ¶ 18.

Class Counsel's rates are relatively low when compared to other approved rates within the Sixth Circuit.  *Gilbert v. Abercrombie & Fitch, Co.*, No. 2:15-cv-2854, 2016 U.S. Dist. LEXIS 113046 (S.D. Ohio Aug. 24, 2016) (approving rates up to $850 per hour for counsel experienced in class actions); *Lonardo v. Travelers Indem. Co.,* 706 F. Supp. 2d 766, 793–94 (N.D. Ohio 2010) (approving rates up to $825 as reasonable); *Doe 1-2 v. Déjà Vu Servs*., No. 2:16-cv-10877, 2017 U.S. Dist. LEXIS 93455, at *30 (E.D. Mich. June 19, 2017) (approving rates as high as $685 per hour); *In re Auto. Parts Antitrust Litig*., No. 12-md-02311, 2017 WL 3525415, at *4 (E.D. Mich. July 10, 2017) ("senior lawyers at top law firm routinely charge well over $1,000").[7]

---

[7]  Class Counsel's rates are more in line with those approved by the Sixth Circuit ***fifteen years ago*** in *Weitz & Luxenberg, P.C. v. Sulzer Orthopedics, Inc.*, 398 F.3d 778, 780 (6th Cir. 2005).  *Weitz* approved rates at the

**3. The Lodestar multiplier of 1.9 is below customary standards.**

In approving class fee requests, courts regularly grant multipliers of the lodestar. An enhancement of between 2.0 and 5.0 is generally applied. *See In re Broadwing,* 252 F.R.D. 369, 381 (S.D. Ohio 2006) ("a multiplier of between approximately 2 and 5 existed in the fee awards in this District"); *Bailey v. AK Steel Corp*., No. 1:06-cv-468, 2008 U.S. Dist. LEXIS 18838, at *7 (S.D. Ohio Feb. 28, 2008) ("[c]ourts regularly apply these multipliers within a normal range of between two and five to account for such factors such as the complexity of the case, the risks involved, the size of the recovery, counsels' continuing obligations to the class, and the range of multipliers awarded in similar cases").

This Court follows these same general guidelines and typically considers multipliers between 2 and 5. *See Lowther v. AK Steel Corp.*, No. 1:11-cv-877, 2012 U.S. Dist. LEXIS 181476, *17 (S.D. Ohio Dec. 12, 2012) (a **3.06** multiplier was "very acceptable under the facts and circumstances of this case and especially in light of the extraordinary service rendered by counsel on behalf of the Class."); *In re Cardinal Health Inc. Sec. Litig.*, 528 F. Supp.2d at 767 (S.D. Ohio 2007) (lodestar multiplier of **6.0** applied*); Bailey*, 2008 U.S. Dist. LEXIS 18838468 (multiplier of **3.04** was approved); *In re Nationwide Financial Servs. Litig.*, Case No. 2:08-cv-249, 2009 U.S. Dist. LEXIS 126962, at *41 (S.D. Ohio Aug. 18, 2009) (multiplier of **2.4** times the lodestar underscored the reasonableness of the requested fee); *Connectivity Sys. Inc.*, 2011 U.S. Dist. LEXIS 7829, at *39 (S.D. Ohio Jan. 25, 2011) (a multiplier of **2.39** times the lodestar).

Here, while the result obtained by Class Counsel would justify a higher multiplier, Class Counsel seeks **1.9** times its current lodestar. Importantly, this multiplier does not take into

---

following categories: 1–5 years, $200/hour; 6–9 years, $300/hour; 10–14 years, $400/hour; and 15+ years, $500/hour. As noted above, the vast majority of hours here were billed at rates below $525 per hour, including time for Messrs. Rubin and McCormick who have 15+ years of experience. *See* McCormick Dec. at ¶16.

account the significant work and additional fees needed to obtain final approval of this Settlement, meaning the actual multiplier will be less than 1.9.[8]

## V.     CLASS COUNSEL'S REASONABLE COSTS SHOULD BE REIMBURSED.

Class Counsel also seeks reimbursement of its reasonable and necessary out of pocket costs expended for the Class's benefit.  To date, Class Counsel has incurred, and seeks reimbursement of $49,374.43 in costs and expenses. McCormick Decl., ¶ 20–21.

These expenses are recoverable because they are typically billed by attorneys to paying clients and include normal costs incurred in connection with travel, experts, computerized research, court filings and services, deposition and court reporters, and document storage, printing, copying, and shipping. *See New Eng. Health Care Employeees Pension Fund v. Fruit of the Loom, Inc.*, 234 F.R.D. 627, 635 (W.D. Ky. 2006) (approving expenses submitted pursuant to these categories); *Zarwasch-Weiss v. SKF Economos* USA, Inc., 838 F. Supp. 2d 654, 675 (N.D. Ohio 2012) (similar).  These expenses were reasonable and necessary to prosecute this litigation, and Class Counsel advanced these expenses without assurance that they would be recouped.

## VI.    CONCLUSION

For all of these reasons, this Court should approve the Class Representative Enhancement Payment of $20,000.00 to be paid in accordance with the terms of the Settlement Agreement, and this Court should approve payment of attorneys' fees, costs, and expenses to Class Counsel of $4,000,000.

---

[8]     The claims process is not yet complete so Class Counsel will continue to monitor the claims process and respond to Class Member questions.  Class counsel must also draft and file the Motion for Final Approval and prepare for and attend the Final Fairness Hearing.  Possible objectors and appeals may also arise creating substantial additional work that would significantly reduce the 1.9 multiplier.

Respectfully submitted,

*/s/ Thomas N. McCormick*
Thomas N. McCormick (0075496)
Kenneth J. Rubin (0077819)
VORYS, SATER, SEYMOUR AND PEASE LLP
52 E. Gay Street
P.O. Box 1008
Columbus, OH 43216-1008
Direct: 614-464-6433
Fax: 614-719-4693
tnmccormick@vorys.com
kjrubin@vorys.com

*Class Counsel and Attorneys for Plaintiffs*

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that, on June 17, 2020, the foregoing was filed with the Clerk using the CM/ECF system, which will send notification of such filing to all parties. Parties may access this filing through the CM/ECF system.

/s/ *Thomas N. McCormick*
Thomas N. McCormick (0075496)
tnmccormick@vorys.com

*One of the Attorneys for Plaintiffs*