**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF OHIO**
**EASTERN DIVISION**

| | | |
|---|---|---|
| **LAURENCE BARTELL**, *et al.*, | : | |
| | : | Case No. 2:14-cv-00401 |
| Individually and on behalf of all | : | |
| others similarly situated, | : | Judge Michael H. Watson |
| | : | |
| *Plaintiffs*, | : | |
| | : | |
| v. | : | |
| | : | |
| **LTF CLUB OPERATIONS COMPANY,** | : | |
| **INC.,** | : | |
| | : | |
| *Defendant*. | : | |

## UNOPPOSED MOTION FOR A FINAL APPROVAL ORDER AND FINAL JUDGMENT APPROVING THE CLASS ACTION SETTLEMENT, AND CERTIFYING A CLASS FOR SETTLEMENT PURPOSES

Plaintiff Laurence Bartell, individually and on behalf of all members of the Class, files this Unopposed Motion for a Final Order approving this Class Action Settlement and certifying the Class for Settlement purposes.  In addition, the parties request that this Court enter a Final Judgment dismissing all claims with prejudice according to the terms and conditions of the Settlement Agreement and this Court's Orders.  Plaintiffs' Motion seeking a Class Representative Service Award and Attorneys' Fees and Costs was filed separately on June 17, 2020 (ECF No. 166).  All deadlines for opposing Final Approval, Final Judgment, and the award of the Class Representative Service Award and Attorney's Fees have passed without objection or opposition.

A Memorandum in Support is included with this Motion.  A proposed Final Approval Order and a proposed Final Judgment are attached as Exhibits 1 and 2.

<u>**MEMORANDUM IN SUPPORT**</u>

## I.     PRELIMINARY STATEMENT

Plaintiff, on behalf of all Settlement Class Members (the "Class") and pursuant to the Settlement Agreement and Release ("Settlement") dated on January 21, 2020 (ECF No. 157-1), seek this Court's Final Approval of the Settlement and dismissal of this lawsuit with prejudice.[1]

This Court should grant final approval of the Settlement because it provides immediate and significant value to the Class, it eliminates the risk of an adverse judgment, and the Release is limited to the claims and causes of action at issue in this litigation.  The Settlement will provide more than $14 million in Cash and Dues Credit Awards with the vast majority of that amount being direct cash payments to Class Member.  Moreover, despite 60,151 members in the Settlement Class, <u>none</u> opted-out and <u>no</u> objections were filed.  In short, the Class Representative, Class Counsel, and all members of the Settlement Class unanimously support this Settlement as fair, reasonable, and adequate, and this Motion is unopposed.[2]  All of the requirements of Fed. R. Civ. P. 23 have been satisfied, the Settlement is in the best interest of the Class, and the Court should grant Final Approval.

## II.     FACTS

### A.     *Procedural History*

On March 25, 2014, Plaintiff filed this putative class action in the Court of Common Pleas for Franklin County, Ohio, captioned *Laurence Bartell & Jerry Stauffer v. LTF Club Operations Company, Inc.*, No. 14-CV-003206. Defendant, LTF Club Operations Company, Inc. d/b/a/ Life Time ("Life Time") removed the case to this Court on April 30, 2014, where it was assigned Case

---

[1] Terms used in this unopposed Motion shall have the same meaning as set forth in the Settlement Agreement.

[2] The Motion for Preliminary Approval (ECF No. 157) and the Motion for an Award of Class Representative Service Award and Attorneys' Fees and Costs (ECF No. 166) contain facts and legal arguments further supporting Final Approval.  Those materials are incorporated here.

No. 2:14-cv-00401.  (ECF No. 1).  After early discovery and investigation, Plaintiff filed a First Amended Complaint on January 5, 2015. (ECF No. 30).

Plaintiff, and the Settlement Class, are former members of Life Time, a network of health clubs.  The Complaint alleged, among other things, that Life Time's agreements, called General Terms Agreements ("GTA"), failed to comply with Ohio law.  Specifically, the GTA did not provide members with the statutory notices of cancellation and other statutory protections required by PECA.  As a result, the Complaint alleged that Life Time further violated PECA by continuing to charge members after they cancelled and by not issuing a refund of dues paid under the GTA minus $10 as PECA requires.  In addition, the Complaint also brought claims for breach of contract, unjust enrichment, fraud, and violations of the Electronic Funds Transfer Act.  These other claims were dismissed pursuant to Life Time's motion on April 14, 2015.  (ECF No. 58).

Regarding the remaining PECA and CSPA[3] claims, on August 8, 2016, the Court denied in part Defendant's motion to dismiss on Article III standing grounds and granted Plaintiff's motion to certify a class of those former members who cancelled a GTA in Ohio from April 30, 2012 to present.  (ECF Nos. 120, 122.)

Life Time responded by filing several motions, including a Motion to Certify Four Questions for Interlocutory Appeal under 28 U.S.C. § 1292(b) (ECF No. 126). On February 9, 2018, this Court granted that Motion, in part, by certifying two questions:  (1) whether Plaintiff suffered an injury-in-fact sufficient to confer Article III standing; and (2) whether a refund of all dues paid under the GTA minus $10, is an *actual* damage recoverable by a class under PECA/CSPA, or whether it is a *statutory* damage and therefore prohibited in class actions under PECA/CSPA.  (ECF No. 148).

---

[3] Pursuant to O.R.C. § 1345.48(A), a violation of PECA also constitutes a violation of the CSPA.

The Sixth Circuit granted Life Time's Petition on May 18, 2018. (ECF No. 152). Briefing was completed in the Fall of 2018 and oral argument occurred on March 13, 2019.

After oral argument the parties again engaged in settlement discussions. The parties mediated with Frank Ray, and after significant post-mediation discussions, the parties reached an agreement on key settlement terms in the Summer of 2019. The remaining settlement terms required substantial follow-up. A full and complete agreement on all terms, including all exhibits to the Settlement Agreement, was reached in January 2020.

### B.     *Discovery*

Since filing the Complaint more than six years ago, Class Counsel and Life Time have vigorously litigated this matter through (a) extensive and exhaustive motions practice including more than 13 motions plus associated responses, replies, and sur-replies; (b) far-reaching written discovery; (c) vast production and review of paper documents, ESI, and Life Time's customer database; (d) investigation with and interviews of former members; (e) six depositions of Life Time's employees, former employees, and corporate representatives; (f) depositions of two putative class representatives; and (g) class certification and related appeals.

### C.     *Plaintiffs' Position*

Following this extensive discovery, motion practice, and related appeals, Plaintiffs continue to believe that Life Time failed to comply with the CSPA/PECA in the sales and cancellation of its memberships; failed to immediately honor cancellations resulting in additional monthly charges; and failed to issue refunds as required by PECA within ten days of the members' cancellation. Nevertheless, given the risks, burden, and expense of continued litigation, and the substantial recovery available to the Class under the Settlement, Plaintiffs have agreed to settle this litigation as set forth in the Settlement Agreement, subject to final Court approval.

**D.**    *Defendant's Position*

Life Time denies all material allegations contained in Plaintiff's Complaint.  Life Time also denies that it was subject to or violated PECA because the Class Representative and other former members voluntarily paid for their memberships on a month to month basis, could cancel their memberships for any reason upon reasonable advance written notice, and could use the health club until termination of their membership. Life Time also disputes that Plaintiff's allegations are amenable to class certification under Ohio law, that Plaintiff has suffered any damages, and that Plaintiff has standing to pursue these claims as a class action.  Nevertheless, given the risks, burden, and expense of continued litigation, Life Time has agreed to settle this litigation as set forth in the Settlement Agreement, subject to final Court approval.

**E.**    *Mediations*

The Parties made extensive efforts to resolve this matter at mediation.  Since 2016 Class Counsel and Life Time have participated in four mediations with four different mediators.  The first mediation occurred on January 22, 2016, in Minneapolis with the Honorable Arthur J. Boylan serving as the mediator.  The second mediation occurred on May 22, 2017, when the Parties met with Magistrate Judge Norah McCann King.  On June 14, 2018, the Parties participated in a third mediation with Robert Kaiser through the Sixth Circuit's mediation services.  Finally, on June 12, 2019, the Parties met with Columbus mediator Frank Ray.  While a resolution was not reached at any of those mediations, extensive post-mediation negotiations, with the assistance of Frank Ray, led to this Settlement Agreement.

**F.**    *Settlement*

The Settlement Agreement provides for the certification of a Settlement Class defined as

people who: (1) joined a Life Time facility in Ohio prior to May 27, 2015;[4] (2) cancelled their membership between March 25, 2012 and September 24, 2016[5]; and (3) paid net joining fees and dues to Life Time in an amount greater than $0.00.  Excluded from the Settlement Class are (1) all executives, officers, and board members of Life Time; (2) all persons employed by Class Counsel; (3) all employees of Judge Watson's chambers and members of his immediate family; and (4) all persons who exclude themselves from the Settlement Class by submitting a timely and valid Request for Exclusion.

In consideration for the Settlement, Life Time will contribute more than $14 Million in cash and Life Time Dues Credit Awards.  Each Class Member was able to file a Claim Form and select either a Cash Award[6] or a Dues Credit Award.[7]  The amounts of the Cash Awards and Dues Credit Awards will be adjusted pro rata to use the entirety of the minimum $14 Million Settlement Fund as calculated under the Settlement.

Specifically, under Section 4 of the Settlement Agreement, the proportion and face amount of each Cash Award and Dues Credit Award will be based on the amount of dues paid by each Class Member after giving Life Time notice of cancellation.  The face amount of the Dues Credit Award will be three times the face amount of the Cash Award.  However, for purposes of calculating credit to the $14 million Settlement Fund, all Dues Credit Awards will count at 1.5

---

[4] Approximately one month after the Court denied LTF's Motion to Dismiss, Life Time amended their GTAs to include PECA required terms, conditions, and notices of cancellation.

[5] In September 2016, Life Time provided PECA required notices of cancellation to all current members.

[6] The Cash Award check must be cashed within 90 days of being issued.  If funds remain from unclaimed or uncashed checks 120 days after being issued, then a second distribution may occur to those Class Members who already cashed a check.

[7] The Dues Credit Award is a credit on a membership account at any Life Time club.  The redemption of a Dues Credit Award must be initiated within 180 days of being issued.  The Dues Credit Award ID number may be transferred by the Class Member one time to any other person before redemption. There will be no redistribution of Dues Credit Awards that are unused.

times the Cash Award. This Dues Credit value was "closely negotiated" to ensure added value to the Class—for every Class Members that selects a Dues Credit Award, the value of the Settlement rises above the $14 million threshold. *See* ECF No. 162 at 4-5. In addition, all Settlement Costs, which include Claims Administration fees and costs, Class Representative Service Award, and Class Counsel's attorneys' fees and costs, will be paid from (or, in the case of the Dues Credit Awards, applied toward) the Settlement Fund.

### G. *Preliminary Approval of the Settlement*

On February 18, 2020, Plaintiffs filed an unopposed motion seeking preliminary approval of the Settlement. On February 24, 2020, this Court granted that motion and entered the Preliminary Approval Order. (ECF No. 158). In that Order, the Court preliminarily approved the Class Action Settlement, preliminarily approved the Class for settlement purposes, appointed Laurence Bartell ("Bartell") as the Class Representative, appointed the undersigned as Class Counsel, approved and directed the issuance of notice to the class, and scheduled the Fairness Hearing for July 9, 2020. *Id*. On April 7, 2020, the Court amended the schedule for notice to the Class, set the claims period to begin on May 13, 2020 and end on July 8, 2020, and rescheduled the Fairness Hearing to July 30, 2020. (ECF No. 165).

### H. *Class Representative Service Award and Attorneys' Fees and Costs*

On June 17, 2020, Plaintiffs filed a Motion seeking a $20,000 Class Representative Service Award and attorneys' fees and costs in the total amount of $4 million (fees of $3,950,625.57 plus reimbursable costs of $49,374.43). (ECF No. 166).[8] Insofar as no party or Class Member filed an opposition or objection to that Motion, it is now unopposed.

---

[8] The award of any attorneys' fees and costs and incentive payments is subject to this Court's approval. This Settlement, however, is not conditioned upon this Court awarding the amounts Plaintiffs are seeking. In the event this Court awards something different than the amounts sought, this Settlement will continue to be effective and enforceable by the Parties.

I.      *Notice, Claims, and Results.*

This Court appointed BrownGreer, PLC as the Claims Administrator and approved a Notice program calling for email Notice, postcard Notice, reminder Notice, and establishment of a Settlement Website, toll-free number, and Settlement Post Office Box.  *See* Declaration of Orrin Brown Jr., ("Brown Declaration") at ¶¶ 6-8, 16-22 (ECF No. 167).

This direct Notice campaign was successful as it reached 57,104 (94.9%) of the Settlement Class.  (Brown Declaration at ¶ 22).  For email Notice, BrownGreer identified 54,793 unique email addresses and sent direct email Notice to each Class Member. (Brown Declaration at ¶ 18).[9] BrownGreer then sent a direct postcard Notice to those Class Members that did not receive email Notice.  This included two groups:  (1) 5,358 Class Members for whom the Class Data never included a facially valid email address; and (2) 8,677 Class Members whose email Notices bounced and/or were deemed "Unreachable" by email.  (Brown Declaration at ¶¶20-21).

In addition, BrownGreer sent reminder emails or reminder postcards 28 days prior to the opt-out deadline.  These reminders mirrored the earlier emails and postcards and were sent to all Class Members that had yet to submit a claim.   (Brown Declaration at ¶ 23).

Class Members submitted claims in three ways: (1) online using the electronic Claim Form available on the Settlement Website; (2) by completing and mailing the hard copy Claim Form available for download on the Settlement Website; or (3) for Class Members receiving postcard Notice, by completing and mailing the detachable Claim Form.  (Brown Declaration at ¶ 24).

BrownGreer received 7,751 total claims (6,186 by electronic claims, 1,542 by Postcard Claim Form, and 23 by hard copy Claim Form).   Of the total claims, 7,344 (94.7%) selected the

---

[9] As explained in the Brown Declaration at ¶18, this direct email Notice was re-sent approximately one week later to correct a small formatting error in the original email Notice.

Cash Award, and 407 (5.3%) selected the Dues Credit Award. (Brown Declaration at ¶25).

Based on the amount of the Settlement Fund, the pro-rata adjustments required by the Settlement, the number of total claims, and factoring Claims Administrator fees/costs and assuming the Court awards the requested Class Representative Service Award and attorney's fees/costs, we calculate the total face value of the Settlement to exceed $14.6 million. The total Cash Awards paid to the Class will be $9,212,289.23 and the total face value of the Dues Credit Awards will be $1,336,401.36. For the Cash Awards, the minimum Award is $85.06, the average is $1,249.46, and the maximum is $9,754.52. For the Dues Credits, the minimum Award is $255.18, the average is $3,391.88, and the maximum is $29,263.58. (Brown Declaration at ¶26).

Last, any member of the Settlement Class seeking to opt-out was required to submit a request by July 8, 2020. To date, BrownGreer has received no requests to be excluded. Likewise, all objections to the fairness of the Settlement had to be filed with the Court by July 8, 2020. No objections were filed with this Court, and BrownGreer has not received, nor is aware of, any objections. (Brown Declaration at ¶¶ 27-28).

## III.   LEGAL STANDARD

The Sixth Circuit follows the "federal policy favoring settlement of class actions." *UAW v. GMC*, 497 F.3d 615, 632 (6th Cir. 2007); *In re Nationwide Fin. Servs. Litig.*, 2009 U.S. Dist. LEXIS 126962, at *2–3 (S.D. Ohio Aug. 18, 2009).

Civil Rule 23(e)(2) authorizes a court to approve a class action settlement "only after a hearing and only on finding that it is fair, reasonable, and adequate" after considering: (A) whether the class representatives and class counsel have adequately represented the class; (B) the proposal was negotiated at arm's length; (C) the relief provided for the class is adequate, taking into account: (i) the costs, risks, and delay of trial and appeal; (ii) the effectiveness of any proposed method of distributing relief to the class, including the method of processing class member claims; (iii) the

terms of any proposed award of attorney's fees, including timing of payment; and (iv) any agreement required to be identified under Rule 23(e)(3); and (D) the proposal treats class members equitably relative to each other.

In addition to these Rule 23(e) factors, the Sixth Circuit utilizes the following "*UAW*" factors for determining the adequacy of a class action settlement: "(1) the risk of fraud or collusion; (2) the complexity, expense and likely duration of the litigation; (3) the amount of discovery engaged in by the parties; (4) the likelihood of success on the merits; (5) the opinions of class counsel and class representatives; (6) the reaction of absent class members; and (7) the public interest." *UAW*, 497 F.3d at 631.

Courts often consider these tests together given the considerable overlap. *Macy v. GC Servs. L.P.*, 2019 U.S. Dist. LEXIS 210632 at 4-5 (W.D. Ky. December 6, 2019).

## IV. ARGUMENT

### A. *The Settlement Agreement is Fair, Reasonable, and Adequate.*

#### 1. The Class Representative and Class Counsel have adequately represented the Class and negotiated at arms-length.

The first two factors under Civil Rule 23(e)(2) (i.e., whether the class representatives and class counsel have adequately represented the class and whether the proposal was negotiated at arm's length), overlap with the first and third *UAW* factors (i.e., the risk of fraud or collusion and the amount of discovery completed).

Here, Plaintiffs conducted extensive discovery including:

- Serving written discovery that included multiple sets of interrogatories and requests for production;
- Reviewing more than 4,500 documents totaling more than 22,500 pages of information;
- Reviewing multiple iterations of Life Time's MMS database, which contains membership data, billing information, payment history, join dates, cancellation dates, etc. on tens of thousands of members.

- Deposing six of Life Time's current and former employees to learn about policies and procedures related to sales, service, billing, and cancellations of its GTAs.

Life Time also served extensive discovery and deposed two proposed Class Representatives.

In addition, the Parties engaged in exhaustive motion and appellate briefing practice on almost every element of Plaintiffs' claims and many affirmative defenses. These memoranda included not only the underlying Motions listed below, but Responses, Replies, and often Supplemental Motions, Sur-Responses, and Sur-Relies:

- Motions to Dismiss (ECF Nos. 8 and 32);
- Motion to Stay Discovery (ECF No. 12);
- Motion to Transfer Venue (ECF No. 26);
- Motions for Class Certification (ECF Nos. 46 and 67);
- Motion for Entry of Judgment under Rule 54(b) (ECF No. 60);
- Motion to Certify Questions to the Supreme Court of Ohio (ECF No. 61);
- Motion for Reconsideration (ECF No. 125);
- Motions to Dismiss for Lack of Standing (ECF No. 76);
- Cross Motions for Summary Judgment (ECF Nos 90 and 95);
- Motion to Certify Four Questions for Interlocutory Appeal under 28 U.S.C. §1292(b) (ECF No. 126); and
- Sixth Circuit Court of Appeals briefing and oral argument in 2018 and 2019.

No risk of fraud or collusion exists because the Settlement was negotiated after five years of hard-fought litigation, including four mediations facilitated by experienced mediators, at arms-length by experienced and reputable counsel.[10] *See* Declaration of Thomas McCormick ("McCormick Decl.") (ECF No. 157-3).

The absence of any agreement between the parties regarding opposition to attorneys' fees further supports the lack of fraud or collusion. Plaintiffs' Motion seeking attorneys' fees was filed on June 17, 2020. Life Time and all Class Members were free to oppose either or both of those requests, but neither Life Time nor any class members chose to file any objections or oppositions.

---

[10] *Hainey v. Parrott*, 617 F. Supp. 2d 668, 673 (S.D. Ohio 2007) (participation of an independent mediator in the settlement negotiations "virtually insures" that the negotiations were conducted at arm's length and without collusion).

Other than those promises contained in the Settlement Agreement, no other agreements exist between the parties. *Id.*[11]

### 2. Likelihood of success on the merits and the adequacy, effectiveness of distribution, and equitable nature of the relief to the Class.

*UAW* factor 5 (likelihood of success on the merits) overlaps with the other requirements from Civil Rule 23(e)(2).  "The most important of the factors to be considered in reviewing a settlement is the probability of success on the merits." *In re Nationwide Fin. Servs. Litig.*, 2009 U.S. Dist. LEXIS 126962 at 5–6 (quoting *In re General Tire & Rubber Co. Sec. Litig.*, 726 F.2d 1075, 1086 (6th Cir. 1984)).  In assessing a settlement, the Court should balance the benefits "to members of the Class, and the immediacy and certainty of a substantial recovery for them, against Plaintiffs' likelihood for success on the merits." *Id.* (citations omitted).

Here, Plaintiffs are confident they will succeed on the merits and that the "actual damage" calculation includes a refund of dues paid under the GTA minus $10.   However, Plaintiffs' confidence is tempered by the arguments already certified for interlocutory appeal under 28 U.S.C § 1292(b), and the additional arguments that Life Time will raise should litigation continue.

In the appeal, two threshold questions are pending and an adverse ruling on either could severely damage the Class.[12]   As noted by this Court, "there is substantial grounds for disagreement" on these issues.  (ECF No. 148 at 20).

Should the Class prevail on the pending appeal, then litigation will continue and Life Time will raise other arguments that may impair or eliminate the Class' claims.  Namely, Life Time has

---

[11]  Section 14.2 of the Settlement Agreement identifies a single-issue Supplemental Agreement that provided for termination should an excessive number of Settlement Class Members timely opt-out.  Because no Class Member opted-out, that Supplement Agreement is inapplicable.

[12]  The first question is whether Plaintiff Bartell suffered an injury in fact sufficient to provide Article III standing. An adverse ruling would terminate this Court's ability to hear the case.  The second question is whether the refund of all dues paid minus $10 as set forth in PECA is an actual damage recoverable in a class action or a statutory damage which is prohibited in a class action under PECA.

argued that (1) PECA does not apply to its open-ended month to month GTAs, (2) Life Time did not have sufficient notice—through posting of a rule or decision in the Ohio Public Inspection file—which is a prerequisite to a class action under the CSPA/PECA; (3) that the voluntary payment doctrine prevents recovery; (4) that the rule of one-way intervention applies; and (5) that Plaintiff is seeking "free memberships," an unjustified "windfall," and that PECA's refund requirement is "unfair" in light of its own more generous business practices. (ECF No. 125). While Plaintiffs and this Court have disagreed with these arguments, favorable decisions in subsequent appellate review on these, and other defenses, is not guaranteed.

The Class is also mindful of the fact that, despite being five years old, this case is a long way from judgment. Continued litigation in light of current events, including the temporary shutdown of all Life Time facilities due to the COVID-19 pandemic, creates additional risk.

These risks must be balanced against the great benefit provided and the ***immediacy*** and ***certainty*** of the recovery. *In re Nationwide Fin. Servs. Litig.*, 2009 U.S. Dist. LEXIS 126962 at 5-6 (*citing In re Telectronics Pacing Sys. Inc.,* 137 F. Supp. 2d 985, 1010 (S.D. Ohio 2001)) (emphasis added). In this balancing process, the valuable cash and dues credit relief and the method of distribution favors settlement. The Cash or Dues Credit Awards to Class Members that filed claims will greatly exceed the amount of dues paid after cancellation. Indeed, the average member of the Settlement Class paid $59 in post cancellation dues, but under this Settlement the average Cash Award will be $1,249.46 and the average Dues Credit will be $3,391.88.

The Settlement treats all Class Members equitably and fairly by apportioning the Settlement Fund based on the amount of post-cancellation dues paid. The post-cancellation dues represent the out-of-pocket costs paid by the Class. Accordingly, those post-cancellation dues represent the most appropriate measure of recovery.

Last, while the appropriateness of the Class Representative Service Award and requested attorneys' fees were discussed in the Motion filed on June 17 (ECF No. 166), at that time information related to the Settlement's total *value* and Award amounts were speculative; this additional information further supports that Motion. Assuming the Court grants the Service Award and attorney's fees in the amounts requested, the Settlement will exceed $14.6 million in value to the Class. The average Cash Award will be $1,249.46 and the average Dues Credit will be $3,391.88. The maximum awards, which are going to unnamed Class Members, are $9,754.52 and $29,263.58, respectively. (Brown Declaration at ¶26). Bartell's contributions and service to the Class have been extraordinary, and a Service Award of $20,000 is appropriate.

Regarding attorneys' fees, Class Counsel's request for 28.5% of the minimum $14 million common fund (a lodestar multiplier of 1.9), is unquestionably fair and reasonable. Last, the timing of payment is proper because under this Court's scheduling Order (ECF No. 165), the Service Award and attorney's fees will be paid by the Claims Administrator at the same time that the Class receives payment.

### 3. Continued litigation would be complex, lengthy, and uncertain.

"In determining the fairness of the Settlement, courts also consider '[t]he complexity, expense and likely duration of the litigation.'" *In re Nationwide Fin. Servs. Litig.*, 2009 U.S. Dist. LEXIS 126962 at *10 (quoting *In re Telectronics*, 137 F. Supp. 2d at 1013 (citations omitted)). Class actions are inherently complex, and settlement "avoids the costs, delays, and multitude of other problems associated with them.'" *Id*. (citations omitted). "As such, avoiding the delay, risks, and costs of continued litigation against a defendant is a valid reason for counsel to recommend and for the court to approve a settlement." *Id*. (citation omitted).

This litigation has already lasted more than six years. It has involved extensive motions and appeals, included hard fought and voluminous discovery, and raised complex legal issues, including some unsettled areas of the law. A settlement at this stage avoids additional litigation, a potential adverse judgment, and uncertain market conditions resulting from COVID-19.

### 4. Opinions of Class Counsel and the Class Representatives

In assessing the settlement, this Court must also consider the experience of counsel and their views of the settlement. *Thacker v. Chesapeake Appalachia, L.L.C.*, 695 F. Supp. 2d 521, 532 (E.D. Ky. 2010) ("In deciding whether a proposed settlement warrants approval, the informed and reasoned judgment of plaintiffs' counsel and their weighing of the relative risks and benefits of protracted litigation are entitled to great deference").

Here, Class Counsel includes experienced trial attorneys who frequently handle consumer protection cases for both plaintiffs and defendants. Class Counsel is experienced in both the litigation and settlement of class actions of this type, has conducted extensive discovery, and has thoroughly evaluated the merits of this case. McCormick Decl., ¶¶3-6. Given the experience of Class Counsel in this matter and in similar matters, their opinions that the terms of this settlement are fair, adequate, and reasonable should be given substantial weight in approving the settlement.

### 5. The public interest and reaction of absent Class Members favors Settlement.

"There is an overriding public interest in favor of settlement of class action lawsuits." *In re Nationwide Fin. Servs. Litig.*, 2009 U.S. Dist. LEXIS 126962 at *22 ("The proposed Settlement ends potentially long and protracted litigation and frees the Court's valuable judicial resources."). Here, that public interest is supported by the fact that none of the 60,151 Class Members excluded themselves from the Settlement and none objected to any of the Settlement's terms or conditions. This unanimous support for the Settlement demonstrates the public interest in Final Approval.

**B.**     *The Class should be certified for Settlement.*

To grant final approval of a settlement class, Rule 23 must be satisfied.  *See* Fed. R. Civ.

P. 23.  Rule 23(e) governs the issue of class certification, whether the proposed class is a litigated

class or, as here, a settlement class.  All criteria for certification of a class for litigation purposes,

except manageability, apply to settlement.  *Amchem Prods.*, 521 U.S. at 620.

This Court has already certified a litigation class alleging these same PECA/CSPA claims

(ECF No. 122 at 18); and preliminarily approved the Class for settlement purposes. (ECF No. 158).

Since that preliminary approval, nothing has changed.

### 1.     Numerosity

Numerosity is presumed when there are at least 40 class members. *Adams v. Anheuser-

Busch Companies, Inc.*, No. 2:10-cv-826, 2012 WL 1058961, at *3-4 (S.D. Ohio Mar. 28, 2012).

Here, the Class contains 60,151 members.  Numerosity is satisfied because it would be impossible

to join all of these members into one action.

### 2.     Commonality

Commonality requires "a common issue the resolution of which will advance the

litigation."  *Powers v. Hamilton County Pub. Defender Comm'n*, 501 F.3d 592, 619 (6th Cir.

2007); *See also Young v. Nationwide Mut. Ins. Co.*, 693 F.3d 532, 542-43 (6th Cir. 2012) (finding

that commonality and typicality requirements were satisfied where a single practice or course of

conduct by defendant gives rise to the claims of plaintiffs and the class).

Here, the Class alleges that the GTAs were uniform in their failure to comply with PECA

by, among other things, not including the duplicate detachable notice of cancellation.  Then, the

Class claims that subsequent PECA violations occurred when Life Time pursuant to policy did not

immediately honor member cancellations and did not refund monies paid under the GTA.

### 3.      Typicality

Typicality is met if the claim "arises from the same event or practice or course of conduct that gives rise to the claim of other class members, and if his or her claims are based on the same legal theory." *In re American Med. Sys., Inc.*, 75 F.3d 1069, 1082 (6th Cir. 1996), *citing* 1 Newberg & Conte, *Newberg on Class Actions*, § 3-13 at 3-76. "Commonality and typicality 'tend to merge' because both of them 'serve as guideposts for determining whether under the particular circumstances maintenance of a class action is economical and whether the plaintiff's claim and the class claims are so interrelated that the interests of the class members will be fairly and adequately protected in their absence.'" *Young, at* 542–43, *citing Dukes*, 131 S.Ct. at 2551 n. 5.

Here, the Class' claims are based on the same legal theories and the same alleged conduct. Because Defendant's form contracts and enforced procedures were consistent and uniform, Class Members suffered the same harm.

### 4.      Adequacy of Representation

The adequacy inquiry "serves to uncover conflicts of interest between named parties and the class they seek to represent." *Amchem*, 521 U.S. at 625. The Sixth Circuit has held that "'[t]here are two criteria for determining whether the representation of the class will be adequate: (1) the representative must have common interests with unnamed members of the class, and (2) it must appear that the representatives will vigorously prosecute the interests of the class through qualified counsel." *Powell v. Tosh*, 2012 U.S. Dist. LEXIS 27912, 31–32 (W.D. Ky. Mar. 1, 2012) (citing *Senter v. GMC*, 532 F.2d 511, 524–25 (6th Cir. 1976)).

Here, the Class Representative and Class Members share common interests. No conflict exits between the Class Representative and the Class Members he seeks to represent. Also, Class Counsel in this case has experience in the litigation and settlement of class actions, and is qualified to represent the Class. Class Counsel has devoted significant time and resources in reviewing

thousands of documents, emails, and information from Life Time.  Class Counsel are experienced trial lawyers and regularly handle cases involving consumer law.  In this case, the settlement negotiations were intense, often contentious, and took place over four mediations spanning almost four years.  There have been no discussions related to Class Counsel's fee and no agreement exists regarding Life Times position on the fee award.

### 5.    Rule 23(b) Requirements

"[T]he potential class must also satisfy at least one provision of Rule 23(b)."  *Rosario*, 963 F.2d at 1017; *see also Gen. Tel Co. v. Falcon*, 457 U.S. 147, 161 (1982).  Rule 23(b)(3) states that a class may be certified when "questions of law or fact common to the members of the class predominate over any questions affecting only individual members, and […] a class action is superior to other available methods for the fair and efficient adjudication of the controversy."

Here, common questions of law and fact predominate because the Class alleges that the GTAs failed to comply with PECA in the same way, and that uniform company policies then resulted in other PECA violations.  A class action is clearly superior to other available methods for the fair and efficient adjudication of this controversy because joinder of 60,151 Class Members is impracticable.  Fed. R. Civ. P. 23(b)(3).  In addition, the post-cancellation dues paid by individual Class Members are relatively small, so the expenses and burden of individual litigation makes it difficult for Class Members to individually seek redress.  In summary, the Class is suitable for certification, and this Court should certify the defined Class pursuant to Rule 23(a) and (b)(3), for purposes of granting preliminary approval of the Settlement.

### C.    *The Notice Program was the Best Practical to Notify the Class.*

Rule 23(e)(1)(B) states that, "[t]he court must direct notice in a reasonable manner to all class members who would be bound by a proposed settlement, voluntary dismissal, or compromise."  The notice must be the best practicable, 'reasonably calculated, under all the

circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections.'" *Phillips Petroleum Co. v. Shutts*, 472 U.S. 797, 812, (1985); see also *Fidel v. Farley*, 534 F.3d 508, 513-14 (6th Cir. 2008).

Here, Life Time's primary form of communication with its members is through email. Therefore, the Notice Program sent direct emails to the last known email address of each Class Member. If email failed, a postcard was sent to the last known mailing address. In addition, a reminder notice was also sent at the mid-point of the claims period. The Claims Administrator also established a Settlement website, toll-free number, and post office box. As a result, direct Notice was received by 94.9% of the Class.

Last, the Notice Program was previously approved by the Court and meets all the requirements of Rule 23: it identifies the Plaintiffs and the Defendant; explains the lawsuit and the settlement classes in a straightforward manner; succinctly describes the essential terms of the proposed settlement; identifies all parties against whom claims are being released; provides class members with information on how to opt-out and provides all applicable deadlines for such action; informs Class Members that if they do not exclude themselves from the Class and the settlement is approved they will be bound by the resulting judgment; and advises Class Members of the amount sought by Class Counsel and of the amount sought for a Class Representative Service Award. In short, the notice provides all the necessary information for Class Members to make an informed decision regarding the proposed Settlement.

## V.     CONCLUSION

For the reasons set forth above, the Court should grant the Plaintiff's Unopposed Motion for a Final Order approving this Class Action Settlement and certifying the Class for Settlement. For the supplemental reasons set forth above, and for the reasons contained in that Motion, it should grant Plaintiffs' June 17, 2020 Motion (ECF No. 166) seeking a Class Representative

Service Award of $20,000 and reasonable Attorneys' Fees and Costs of $4 million. Finally, this Court should grant Final Judgment dismissing all claims and causes of action on the merits and with prejudice according to the terms and conditions set forth in the Settlement Agreement and this Court's Orders.

Respectfully submitted,

*/s/ Thomas N. McCormick*
Thomas N. McCormick (0075496)
Kenneth J. Rubin (0077819)
VORYS, SATER, SEYMOUR AND PEASE LLP
52 E. Gay Street
P.O. Box 1008
Columbus, OH 43216-1008
Direct: 614-464-6433
Fax: 614-719-4693
tnmccormick@vorys.com
kjrubin@vorys.com

*Attorneys for Plaintiffs*

## <u>CERTIFICATE OF SERVICE</u>

The undersigned hereby certifies that on June 20, 2020, a copy of the foregoing was filed electronically.  Notice of this filing will be sent to all parties by operation of the Court's electronic filing system.  The parties may access this filing through the Court's system.

/s/ Thomas N. McCormick_____
Thomas N. McCormick (0075496)
tnmccormick@vorys.com
