UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION

Laurence Bartell, *et al.*,
Individually and on behalf of all
others similarly situated,                           Case No. 2:14-cv-401

                    Plaintiffs,                        Judge Michael H. Watson

          v.                                           Magistrate Judge Jolson

LTF Club Operations Company,
Inc.,

                    Defendant.

<u>OPINION AND ORDER</u>

Plaintiff Laurence Bartell ("Plaintiff"), individually and on behalf of similarly

situated individuals, and Defendant LTF Club Operations Company, Inc., have entered

into a Settlement Agreement intended to resolve the litigation pending in this Court.

Plaintiff filed an Unopposed Motion seeking final approval of the proposed class action

settlement as described in the parties' Settlement Agreement, and to enter final

judgment in this action.  ECF No. 168.  Plaintiff also moves for attorney's fees, costs,

and a Class Representative Service Award.  ECF No. 166.  No objection or opposition

was filed to that motion.

## I.  BACKGROUND

### A.    Procedural History

Plaintiff filed this putative class action in the Court of Common Pleas for Franklin

County, Ohio.  Defendant, LTF Club Operations Company, Inc. d/b/a/ Life Time ("Life

Time") removed the case to this Court on April 30, 2014.  ECF No. 1.  Plaintiff, and the

Settlement Class, are former members of Life Time, which operates health and fitness

centers throughout Ohio. The Complaint alleged, among other things, that Life Time's agreements, called General Terms Agreements ("GTA"), failed to comply with Ohio law by not providing members with the statutory notices of cancellation and other statutory protections required by PECA. As a result, the Complaint alleged that Life Time further violated PECA by continuing to charge members after they cancelled and by not issuing a refund of dues paid under the GTA minus $10 as PECA requires. In addition, the Complaint also brought claims for breach of contract, unjust enrichment, fraud, and violations of the Electronic Funds Transfer Act. These other claims were dismissed pursuant to Life Time's motion on April 14, 2015. ECF No. 58.

Regarding the remaining PECA and CSPA claims, on August 8, 2016, the Court denied in part Defendant's motion to dismiss on Article III standing grounds and granted Plaintiff's motion to certify a class of former members who cancelled a GTA in Ohio from April 30, 2012 to present. ECF Nos. 120, 122.

Life Time responded by filing several motions, including a Motion to Certify Four Questions for Interlocutory Appeal under 28 U.S.C. § 1292(b). *See* ECF No. 126. On February 9, 2018, this Court granted that Motion, in part, by certifying two questions: (1) whether Plaintiff suffered an injury-in-fact sufficient to confer Article III standing; and (2) whether a refund of all dues paid under the GTA minus $10, is an *actual* damage recoverable by a class under PECA/CSPA, or whether it is a *statutory* damage and therefore prohibited in class actions under PECA/CSPA. ECF No. 148.

The Sixth Circuit granted the Petition on May 18, 2018. ECF No. 152. Briefing was completed in the Fall of 2018 and oral argument occurred on March 13, 2019.

After oral argument the parties mediated and after extensive post-mediation negotiation reached an agreement. The matter is now back before this Court on Limited Remand from the Sixth Circuit Court of Appeals to conduct a fairness hearing. ECF Nos. 155 and 156.

The Court held a fairness hearing on July 30, 2020. The Class representative was present at the hearing in support of the settlement.

**B.      The Settlement Agreement**

The Settlement Agreement provides for a Settlement Class defined as people who: (1) joined a Life Time facility in Ohio prior to May 27, 2015; (2) cancelled their membership between March 25, 2012 and September 24, 2016; and (3) paid net joining fees and dues to Life Time in an amount greater than $0.00. Excluded from the Settlement Class are (1) all executives, officers, and board members of Life Time; (2) all persons employed by Class Counsel; (3) all employees of Judge Watson's chambers and members of his immediate family; and (4) all persons who exclude themselves from the Settlement Class by submitting a timely and valid Request for Exclusion.

In consideration for the Settlement, Life Time will contribute more than $14 Million in cash and Life Time Dues Credit Awards. Each Class Member was able to file a Claim Form and select either a Cash Award or a Dues Credit Award. The amounts of the Cash Awards and Dues Credit Awards will be adjusted pro rata to use the entirety of the $14 Million Settlement Fund as calculated under the Settlement.

Under Section 4 of the Agreement, the proportion and face amount of each Cash and Dues Credit Award is based on the amount of dues paid by each Class Member after giving Life Time notice of cancellation. The face amount of the Dues Credit Award

will be three times the face amount of the Cash Award. However, for purposes of

calculating credit to the $14 million Settlement Fund, all Dues Credit Awards count at

1.5 times the Cash Award. This means that, for every Class Members who selects a

Dues Credit, the value of the Settlement rises above the $14 million threshold. All

Settlement Costs, such as Administration fees and costs, the Class Representative

Service Award, and Class Counsel's attorneys' fees and costs, will be paid from (or, in

the case of the Dues Credit Awards, applied toward) the Settlement Fund.

**C.     Preliminary Approval of the Settlement**

On February 18, 2020, Plaintiffs filed an unopposed motion seeking preliminary

approval of the Settlement. On February 24, 2020, this Court granted that motion. ECF

No. 158. In that Order, the Court preliminarily approved the Class Action Settlement,

preliminarily approved the Class for settlement purposes, appointed Laurence Bartell

("Bartell") as the Class Representative, appointed the undersigned as Class Counsel,

approved and directed the issuance of notice to the class, and scheduled the Fairness

Hearing for July 9, 2020. *Id.* On April 7, 2020, the Court amended the schedule for

notice to the Class, set the claims period to begin on May 13, 2020 and end on July 8,

2020, and rescheduled the Fairness Hearing to July 30, 2020. ECF No. 165.

**D.     Notice and Claims**

This Court appointed BrownGreer, PLC as the Claims Administrator and

approved a Notice program calling for email Notice, postcard Notice, reminder Notice,

and establishment of a Settlement Website, toll-free number, and Settlement Post

Office Box. ECF No. 167 (Brown Declaration at ¶¶ 6–8, 16–22).

For email Notice, BrownGreer identified 54,793 unique email addresses and sent

direct email Notice to each Class Member. ECF No. 167 at ¶ 18. BrownGreer then sent a direct postcard Notice to those Class Members that did not receive email Notice. This included two groups: (1) 5,358 Class Members for whom the Class Data never included a facially valid email address; and (2) 8,677 Class Members whose email Notices bounced and/or were deemed "Unreachable" by email. ECF No. 167 at ¶¶ 20–21.

In addition, BrownGreer sent reminder emails or reminder postcards 28 days prior to the opt-out deadline. These reminders mirrored the earlier emails and postcards and were sent to all Class Members that had yet to submit a claim. ECF No. 167 at ¶ 23.

BrownGreer received 7,751 total claims with 94.7% selecting Cash Awards and 5.3% selecting Dues Credit Awards. ECF No. 167 at ¶ 25. Accordingly, the total value of the Settlement will exceed $14 million, and after Settlement Costs are paid, the Class will receive approximately $9.2 million in Cash Awards and $1.3 million in Dues Credit Awards. ECF No. 168 at ¶2 6.

A BrownGreer representative appeared at the fairness hearing and answered questions about the estimated Cash Award payouts to Class Members.

## II. APPROVAL OF THE CLASS SETTLEMENT

When deciding whether to approve a proposed settlement, the Court must consider whether the settlement is "fair, reasonable, and adequate." Fed. R. Civ. P. 23(e)(2).

In making this determination, the Court considers the following factors:

(1) the risk of fraud or collusion; (2) the complexity, expense and likely duration of the litigation; (3) the amount of discovery engaged in by the

parties; (4) the likelihood of success on the merits; (5) the opinions of class counsel and class representatives; (6) the reaction of absent class members; and (7) the public interest.

*Poplar Creek Dev. Co. v. Chesapeake Appalachia, L.L.C.*, 636 F.3d 235, 244 (6th Cir. 2011) (citations and internal quotation marks omitted). The Court "enjoys wide discretion in assessing the weight and applicability of these factors." *Granada Invs., Inc. v. DWG Corp.*, 962 F.2d 1203, 1205–06 (6th Cir. 1992).

For the reasons that follow, the Court concludes that the Settlement is fair, adequate, and reasonable.

## A. The Risk of Fraud or Collusion

First, the Court finds that there is no evidence—or even a suggestion—that the settlement was the product of fraud or collusion. *See IUE-CWA v. Gen. Motors Corp.*, 238 F.R.D. 583, 598 (E.D. Mich. 2006) ("Courts presume the absence of fraud or collusion unless there is evidence to the contrary.").

Rather, the settlement is the result of arm's-length, well-researched, and protracted negotiations. This lawsuit spanned more than six years and included four mediations facilitated by experienced and highly skilled mediators. In addition, the absence of any agreement between the parties regarding opposition to attorneys' fees further supports the lack of fraud or collusion. The Court concludes that this factor favors approval of the Settlement.

## B. Complexity, Expense, and Likely Duration of the Litigation

Generally, "[m]ost class actions are inherently complex and settlement avoids the costs, delays, and multitude of other problems associated with them." *In re Telectronics*

*Pacing Sys., Inc.*, 137 F. Supp. 2d 985, 1013 (S.D. Ohio 2001) (quoting *In re Austrian and German Bank Holocaust Litig.*, 80 F. Supp. 2d 164, 174 (S.D. N.Y. 2000)).

Here, this litigation has already lasted more than six years and included voluminous discovery, extensive motion practice, and a pending appeal. Nevertheless, substantial hurdles exist, and considerable work remains, before the Class may be in a position to obtain judgment on the merits. Moreover, subsequent appeals would be likely given the claims at issue and the novel arguments raised by Life Time. This complexity, risk, cost, and additional delay strongly favors approval of this Settlement, which secures a substantial benefit for the Class Members.

## C.     The Amount of Discovery Engaged in By the Parties

To confirm that Named Plaintiff "ha[s] had access to sufficient information to evaluate [her] case and to assess the adequacy of the proposed Settlement," the Court must consider the amount of discovery engaged in by the parties. *In re Broadwing, Inc. ERISA Litig.*, 252 F.R.D. 369, 374 (S.D. Ohio 2006). "In considering whether there has been sufficient discovery to permit the plaintiffs to make an informed evaluation of the merits of a possible settlement, the court should take account not only of court-refereed discovery but also informal discovery in which parties engaged both before and after litigation commenced." *UAW v. Gen'l Motors Corp.*, No. 05-CV-73991-DT, 2006 WL 891151, at *19 (E.D. Mich. Mar. 31, 2006).

In this case, the Parties engaged in extensive discovery (including written discovery, document productions and eight depositions) and extensive motion practice (including class certification, summary judgment, and an appeal before the Sixth Circuit Court of Appeals). Both sides have collected ample evidence to evaluate the strengths

and weaknesses of their positions and determined that the settlement is fair and reasonable under the circumstances.  The Court finds that both sides made well-informed decisions to enter into the Settlement.  This factor weighs in favor of approving the proposed Settlement.

**D.    The Likelihood of Success on the Merits**

"The most important of the factors to be considered in reviewing a settlement is the probability of success on the merits.  The likelihood of success, in turn, provides a gauge from which the benefits of the settlement must be measured."  *Poplar Creek,* 636 F.3d at 245 (quoting *In re Gen. Tire & Rubber Co. Sec. Litig.*, 726 F.2d 1075, 1086 (6th Cir. 1984)).

Here, this Court certified for interlocutory appeal under 28 U.S.C § 1292(b), two threshold questions.  ECF No. 148.  The first question is whether Plaintiff suffered an injury in fact sufficient to provide Article III standing.  An adverse ruling would terminate this Court's ability to hear the case.  The second question is whether the refund of all dues paid minus $10 as set forth in PECA is an actual damage that is recoverable in a class action or a statutory damage that is prohibited in a class action under PECA.  As noted by this Court, "there is substantial grounds for disagreement" on these issues. ECF No. 148 at 20.

Because this appeal is still pending, and because an adverse ruling on either question would severely damage the Class, the likelihood of success is highly uncertain. Moreover, even assuming the Class prevails on the pending appeal, ultimate success is not guaranteed because Life Time will raise other arguments that may impair or eliminate the Class' claims.

In summary, continued litigation in the face of strong opposition and the "substantial ground for disagreement" that exists as to the merits of Plaintiff's claims creates substantial risk to the Class.  When balanced against the substantial benefits provided, this factor weighs in favor of approving the proposed Settlement.

## E.    The Opinions of Class Counsel and Class Representatives

The recommendation of Class Counsel, skilled in class actions and consumer litigation, that the Court should approve the Settlement is entitled to deference.  *See, e.g., Williams v. Vukovich*, 720 F.2d 909, 922–23 (6th Cir. 1983) ("The court should defer to the judgment of experienced counsel who has competently evaluated the strength of his proofs . . . . [T]he deference afforded counsel should correspond to the amount of discovery completed and the character of the evidence uncovered.").  *See also Kritzer v. Safelite Solutions, LLC*, No. 2:10—cv-0729, 2012 U.S. Dist. LEXIS 74994, at *7 (S.D. Ohio May 30, 2012) ("The Court gives weight to the belief of experienced counsel that a settlement is in the best interests of the class.").

In this case, Class Counsel has extensive experience in class action litigation and complex consumer matters.  ECF No. 166-1, Declaration of Thomas McCormick at ¶¶ 6–8.  After significant discovery, extensive motion practice, and protracted arm's-length negotiations including four mediations, the Parties reached a settlement in principle.  ECF 166 at 16–18.  Class Counsel have concluded, and the Class Representative agrees, that this settlement is not only fair and reasonable but also a good result that confers substantial benefits to the Class.  ECF Nos. 157 and 168.  The Court therefore finds that this factor favors approval of the proposed Settlement.

**F.      The Reaction of Absent Class Members**

The Court must also consider the reaction of the absent class members.  *Poplar Creek*, 636 F.3d at 244; *In re Broadwing*, 252 F.R.D. at 376.

Here, individual notice was sent by email or postcard to 60,151 class members. ECF No. 167 at ¶ 22.  No objections were filed or requests for exclusion submitted. ECF No. 167 at ¶¶ 27–28.  This creates the inference that all or most of the Class Members had no concerns about the proposed settlement.  This positive response from the Settlement Class weighs in favor of approving the settlement.  *See, e.g., In re Broadwing*, 252 F.R.D. at 376.

**G.      The Public Interest**

"Public policy generally favors settlement of class action lawsuits."  *Hainey v. Parrott*, 617 F. Supp. 2d 668, 679 (S.D. Ohio 2007) (citations omitted).  In this case, the Settlement confers immediate benefits on the Class Members, avoids the risks and expense in further litigation, and conserves judicial resources.  The Court therefore finds that this factor favors approving the Settlement.

In sum, after considering all the relevant factors, the Court concludes that the Settlement provides a substantial benefit to the parties and is fair, reasonable, and adequate.  *See* Fed. R. Civ. P. 23(e)(2).

## III.  APPROVAL OF SETTLEMENT COSTS

**A.      Attorney's Fees**

Plaintiff's counsel seeks fees of $3,950,625.57 which equals approximately 28.5% of the minimum Settlement Fund of $14 million.  ECF No. 166.  No Class Member has objected to this request, and Defendant did not file an opposition.

"When awarding attorney's fees in a class action, a court must make sure that counsel is fairly compensated for the amount of work done as well as for the results achieved." *Rawlings v. Prudential-Bache Props., Inc.*, 9 F.3d 513, 516 (6th Cir. 1993). Rule 23 authorizes a court to "award reasonable attorney's fees and non-taxable costs that are authorized by law or by the parties' agreement." *See* Fed. R. Civ. P. 23(h). Named Plaintiff's successful pursuit of this action can also support an award of reasonable attorney's fees. *See Ramey v. Cincinnati Enquirer, Inc.*, 508 F.2d 1188, 1194 (6th Cir. 1974) (citing *Mills v. Electric Auto—Lite Co.*, 396 U.S. 375 (1970)).

District courts apply a two-part analysis to assess the reasonableness of an attorney fee petition. *See In re Cardinal Health Inc. Sec. Litigs.*, 528 F. Supp. 2d 752, 760 (S.D. Ohio Dec. 31, 2007). First, the court must determine the appropriate method to calculate the fees, using either the percentage of fund or the Lodestar approach. *Id.* Whichever method is utilized, the United States Court of Appeals for the Sixth Circuit requires "only that awards of attorney's fees by federal courts in common fund cases be reasonable under the circumstances." *Rawlings*, 9 F.3d. at 516. Second, the Court must consider six factors to assess the reasonableness of the fee. *See Moulton v. U.S. Steel Corp.*, 581 F.3d 344, 352 (6th Cir. 2009).

Here, the Court is applying the percentage of the fund method. *See, e.g., Gascho v. Global Health Fitness Holdings, LLC*, 822 F.3d 269, 279 (6th Cir. 2016) (indicating that the district court must make a "clear statement" as to which calculation method is being applied); *see also Kimber Baldwin Designs, LLC v. Silt' Commc'n, Inc.*, No. 1:16-cv-448, 2017 U.S. Dist. LEXIS 186830, at *14 (S.D. Ohio Nov. 13, 2017) (Black, J.) ("In the Southern District of Ohio, the preferred method is to award a

reasonable percentage of the fund, with reference to the lodestar and the resulting multiplier." (internal citations and quotations omitted)).  Accordingly, the Court will consider the following factors in determining whether the fee request is reasonable under the circumstances:

> (1) the value of the benefit rendered to the plaintiff class; (2) the value of the services on an hourly basis; (3) whether the services were undertaken on a contingent fee basis; (4) society's stake in rewarding attorneys who produce such benefits in order to maintain an incentive to others; (5) the complexity of the litigation; and (6) the professional skill and standing of counsel involved on both sides.

*Moulton*, 581 F.3d at 352.

Under the circumstances of this specific case, particularly where neither Defendant nor any Class Member oppose the fee request and the Class has received a substantial benefit, the Court concludes that all of these factors weigh in favor of approving an award of attorney's fees.

As to the first factor, the Court has already described the benefit conferred.  The total value of the settlement exceeds $14 million and even assuming a 100% claims rate each Class Member was eligible to receive a Cash Award exceeding the amount of post-cancellation dues paid.  ECF No. 166 at 5.  With the claims process now complete, the average Cash Award will be $1,249.46 and the average Dues Credit will be $3,391.88 with some payments greatly exceeding these amounts.  ECF 167 at ¶ 26. These substantial payments represent meaningful and useful payments to Class Members.  This factor weighs in favor of approving the requested award.

Second, the value of the services on an hourly basis, multiplied by the hourly rate, favors the proposed fee award.  Here, although not required, a cross-check using

Class Counsel's Lodestar amount weighs in favor of granting the requested fee award of $3,950,625.57.

Class Counsel spent over 5,296 hours litigating this case for a lodestar calculation of $2,069,175.15.  ECF No. 166 at 16–18; *see also* ECF 166-1 at ¶ 13.  The requested fee of $3,950,625.57 corresponds with a 1.9 multiplier to the lodestar which is well-within customary amounts under similar circumstances.  The Court finds that Class Counsel's hourly rates are reasonable under the circumstances of this particular case.

Third, Class Counsel represents that they took on this case pursuant to a contingency fee agreement.  In doing so, Class Counsel assumed a real risk in taking the case, investing time, effort, and money over a period of years with no guarantee of recovery.  ECF No. 166-1 at ¶ 3, This factor weighs in favor of approving the requested fee award.  *See, e.g., In re Sulzer Hip Prosthesis and Knee Prosthesis Liability Litig.*, 268 F. Supp. 2d 907, 936 (N.D. Ohio 2003) ("Absent this class action, most individual claimants would lack the resources to litigate a case of this magnitude.")

The Court next considers whether the fourth factor, society's stake in rewarding attorneys who produce such benefits, militates in favor of an award of the requested attorney's fees.  Class actions such as this "have a value to society more broadly, both as deterrents to unlawful behavior—particularly when the individual injuries are too small to justify the time and expense of litigation—and as private law enforcement regimes that free public sector resources."  *Gascho*, 822 F.3d at 287.  Without a class action, the individual plaintiffs would not have had a strong incentive to pursue recovery because any monetary award would have been severely outweighed by the costs to litigate their cases.

The remaining two factors, the complexity of the litigation and the professional skill and standing of the attorneys involved, also militate in favor of granting the requested award.  This is a complex case with nuanced issues and protracted litigation.

Class Counsel have extensive experience in class action litigation similar to this action.  ECF No. 166-1 at ¶¶ 5–8.  As discussed above, the hours expended and time records submitted by Class Counsel further underscore their competency and efficient handling of this matter, favoring approval.  For all of these reasons, the Court concludes that these factors favor approval of the fee award of $3,950,625.57 to Class Counsel.

## B.    Out-of-Pocket Expenses

"Under the common fund doctrine, class counsel is entitled to reimbursement of all reasonable out-of-pocket expenses and costs in the prosecution of claims, and in obtaining settlement, including but not limited to expenses incurred in connection with document productions, consulting with and deposing experts, travel and other litigation-related expenses."  *In re Cardizem CD Antitrust Litig.*, 218 F.R.D. 508, 532 (ED. Mich. 2003).

Class Counsel avers that out-of-pocket expenses, which amount to $49,374.43, were necessary and directly related to this litigation.  ECF No. 166-1 at ¶¶ 20–21.  The Court finds that all of these costs are reasonable and necessary to litigate and settle this case and therefore approves the request of $49,374.43, for out-of-pocket expenses.  *Cf. Feiertag v. DDP Holdings, LLC*, No. 14-CV-2643, 2016 WL 4721208, at *8 (S.D. Ohio Sept. 9, 2016).

C.     **Class Representative Service Award**

Service "awards are efficacious ways of encouraging members of a class to become class representatives and rewarding individual efforts taken on behalf of the class." *Hadix v. Johnson*, 322 F.3d 895, 897 (6th Cir. 2003) (reviewing such awards under an abuse of discretion standard). Notably, "courts routinely approve incentive awards to compensate named plaintiffs for the services they provided and the risks they incurred during the course of the class action litigation." *Dilworth v. Case Farms Processing, Inc.*, No. 5:08—cv-1694, 2010 WL 776933, at *7 (N.D. Ohio Mar. 8, 2010) (internal quotation marks and citations omitted).

Here, Plaintiffs propose an award of $20,000 to Named Plaintiff Bartell for his efforts in bringing and pursuing this action. ECF No. 166 at 6–8. Class Counsel represents that Bartell spent significant time on the lawsuit by reviewing and collecting documents; preparing for and attending strategy sessions, a deposition, and mediation; and closely tracked the lawsuit thorough motion practice and appeal. ECF No. 166-1 at ¶ 22. These efforts have resulted in a substantial benefit to the Class including a total Settlement value in excess of $14 million, average Cash Awards of $1,249.46, and average Dues Credits Awards of $3,391.88. ECF No. 167 at ¶ 26. In light of this service, and this substantial benefit, the Court approves a service award of $20,000.

IV.     **APPROVAL OF CLASS CERTIFICATION FOR SETTLEMENT**

To grant final approval of a settlement class, Rule 23 must be satisfied. *See* Fed. R. Civ. P. 23. This Court has already certified a litigation class alleging these same PECA/CSPA claims, and preliminarily approved the Class for settlement purposes. ECF No. 122 at 18; ECF No. 158. Since that preliminary approval, nothing has changed.

## A.  Numerosity

Numerosity is presumed when there are at least 40 class members. *Adams v. Anheuser-Busch Companies, Inc.*, No. 2:10-cv-826, 2012 WL 1058961, at *3-4 (S.D. Ohio Mar. 28, 2012). Here, the Class contains 60,151 members.  Numerosity is satisfied because it would be impossible to join all of these members into one action.

## B.  Commonality

Commonality requires "a common issue the resolution of which will advance the litigation."  *Powers v. Hamilton County Pub. Defender Comm'n*, 501 F.3d 592, 619 (6th Cir. 2007); *See also Young v. Nationwide Mut. Ins. Co.*, 693 F.3d 532, 542–43 (6th Cir. 2012) (finding that commonality and typicality requirements were satisfied where a single practice or course of conduct by defendant gives rise to the claims of plaintiffs and the class).

Here, the Class alleges that the GTAs were uniform in their failure to comply with PECA by, among other things, not including the duplicate detachable notice of cancellation.  Then, the Class claims that subsequent PECA violations occurred when Life Time pursuant to policy did not immediately honor member cancellations and did not refund monies paid under the GTA.

## C.  Typicality

Typicality is met if the claim "arises from the same event or practice or course of conduct that gives rise to the claim of other class members, and if his or her claims are based on the same legal theory."  *In re American Med. Sys., Inc.*, 75 F.3d 1069, 1082 (6th Cir. 1996).  "Commonality and typicality 'tend to merge' because both of them 'serve as guideposts for determining whether under the particular circumstances

maintenance of a class action is economical and whether the plaintiff's claim and the class claims are so interrelated that the interests of the class members will be fairly and adequately protected in their absence.'" *Young,* 693 F.3d *at* 542–43.

Here, the Class' claims are based on the same legal theories and the same alleged conduct. Because Defendant's form contracts and enforced procedures were consistent and uniform, Class Members suffered the same harm.

**D.    Adequacy of Representation**

The adequacy inquiry "serves to uncover conflicts of interest between named parties and the class they seek to represent." *Amchem*, 521 U.S. at 625. The Sixth Circuit has held that "'[t]here are two criteria for determining whether the representation of the class will be adequate: (1) the representative must have common interests with unnamed members of the class, and (2) it must appear that the representatives will vigorously prosecute the interests of the class through qualified counsel." *Powell v. Tosh*, 2012 U.S. Dist. LEXIS 27912, at ** 31–32 (W.D. Ky. Mar. 1, 2012) (citing *Senter v. GMC*, 532 F.2d 511, 524–25 (6th Cir. 1976)).

Here, the Class Representative and Class Members share common interests. No conflict exists between the Class Representative and the Class Members he seeks to represent. Also, Class Counsel in this case has experience in the litigation and settlement of class actions and is qualified to represent the Class. Class Counsel has devoted significant time and resources to litigating and negotiating this matter to a successful Settlement.

**E.    Rule 23(b) Requirements**

"[T]he potential class must also satisfy at least one provision of Rule 23(b)."

*Rosario*, 963 F.2d at 1017; *see also Gen. Tel Co. v. Falcon*, 457 U.S. 147, 161 (1982).

Rule 23(b)(3) states that a class may be certified when "questions of law or fact

common to the members of the class predominate over any questions affecting only

individual members, and [...] a class action is superior to other available methods for

the fair and efficient adjudication of the controversy."

Here, common questions of law and fact predominate because the Class alleges

that the GTAs failed to comply with PECA in the same way, and that uniform company

policies then resulted in other PECA violations.  A class action is clearly superior to

other available methods for the fair and efficient adjudication of this controversy

because joinder of 60,151 Class Members is impracticable.  Fed. R. Civ. P. 23(b)(3).  In

addition, the post-cancellation dues paid by individual Class Members are relatively

small, so the expenses and burden of individual litigation makes it difficult for Class

Members to individually seek redress.  In summary, the Class is suitable for

certification, and the Court certifies the defined Class pursuant to Rule 23(a) and (b)(3)

for purposes of Settlement.

## V.  CONCLUSION

For the foregoing reasons, the Court **GRANTS** final approval of the Settlement

and enters final judgment as follows:

1.    This Final Order Approving Class Action Settlement incorporates fully and

completely the Settlement Agreement as if fully re-written here.  Unless otherwise

provided herein, all defined terms from the Settlement Agreement shall have the same meaning in this Final Approval Order.

2.    Because adequate notice has been disseminated and all potential Class Members have been given the opportunity to opt-out of this Action, the Court has personal jurisdiction with respect to the state law and common law claims of all Settlement Class Members.  The Court has subject-matter jurisdiction over this Action pursuant to 28 U.S.C. §§ 1332, 1441, and 1453, including jurisdiction to approve the proposed settlement, grant certification of the Class, and dismiss the Action on the merits with prejudice.

3.    The Class is certified for settlement purposes, under Fed. R. Civ. P. 23(b)(3), the Court finding that the Class satisfies the applicable requirements of Fed. R. Civ. P. 23 and due process.

a.  The "Class" includes all who: (1) joined a Life Time health and fitness center operated in Ohio ("Life Time Centers") prior to May 27, 2015; (2) cancelled their membership between March 25, 2012 and September 24, 2016; and (3) paid net joining fees and dues to Defendant in an amount greater than $0.00.  Excluded from the Class are 1) all executives, officers, and board members of Defendant; 2) all persons employed by Class Counsel; 3) all employees of Judge Watson's chambers and members of his immediate family; and 4) those members of the Settlement Class that submitted a timely and valid Request for Exclusion. The total number of Class members is approximately 60,151 persons.

b.  No member of the Settlement Class has submitted a Request for

Exclusion.

4.      Class Counsel and the Class Representative have fully and adequately represented the Class for purposes of litigating this matter and in entering into and implementing the Settlement Agreement and have satisfied the requirements of Fed. R. Civ. P. 23(a)(4).

5.      The Court finds that all notice requirements, and follow-up procedures, have been implemented pursuant to the Settlement Agreement and this Court's Preliminary Approval Order and that they:

   a.   constituted the best practicable notice to Class Members under the circumstances of this Action;

   b.   constituted notice that was reasonably calculated, under the circumstances, to apprise Class Members of (i) the pendency of this Action, (ii) the terms and conditions of the Settlement Agreement, their rights thereunder, and instructions on how to submit, and the timetable for submission of, a Claim Form, (iii) their right to exclude themselves from the Class and the proposed settlement and submit a Request for Exclusion, (iv) their right to object to any aspect of the proposed settlement (including final certification of the settlement Class, the fairness, reasonableness, or adequacy of the proposed settlement, the adequacy of the Class's representation by the Class Representative or Class Counsel, and/or the award of attorneys' fees and costs and the service award to the Class Representative), (v) their right to appear at the Final Approval Hearing, either on their own or through counsel hired at

their own expense, if they did not exclude themselves from the Class, and (vi) the binding effect of the Orders and Judgment in this Action, whether favorable or unfavorable, on all persons who do not file a Request for Exclusion;

c. constituted notice that was reasonable, adequate, and sufficient notice to all persons and entities entitled to be provided with notice; and

d. constituted notice that fully satisfied the requirements of the Federal Rules of Civil Procedure (including Fed. R. Civ. P. 23(c)(2) and (e)), and the United States Constitution (including the Due Process Clause), and any other applicable law.

6. Defendant complied with the notice requirements in the Class Action Fairness Act, 28 U.S.C. § 1715. The Court's docket shows that no Attorney General objected to the Settlement Agreement or otherwise attempted to intervene or participate in the Action or the Fairness Hearing following receipt of the Class Action Fairness Act notice.

7. The terms and provisions of the Settlement Agreement have been entered into in good faith and are fully and finally approved as fair, reasonable, and adequate, and in the best interests of each of the Parties and Settlement Class Members.  The Parties and Settlement Class Members are hereby directed to implement and consummate the Settlement Agreement according to its terms and provisions.

8. The terms of the Settlement Agreement and this Final Order and the accompanying Final Judgment are binding on the Parties, the Class Representative, and all other Settlement Class Members, as well as their heirs, executors, and

administrators, successors and assigns, and those terms shall have *res judicata* and other preclusive effect in all pending and future claims, lawsuits, or other proceedings maintained by or on behalf of any such persons, to the extent those claims, lawsuits, or other proceedings involve matters that were or could have been raised in this Action and are encompassed in the Release of Claims set forth in the Settlement Agreement.

9. The Class Representative and all Settlement Class Members shall be bound by the Release of Claims in Section 13.01 of the Settlement Agreement, which provides:

> As of the Effective Date, the Class Representative and each Settlement Class Member, as well as their respective assigns, heirs, executors, administrators, successors and agents, hereby release, resolve, relinquish, and discharge each and all of the Released Parties from each of the Released Claims. "Released Claims" include any and all claims, demands, actions, causes of action, rights, offsets, suits, damages (whether general, special, punitive, or multiple), lawsuits, liens, costs, losses, expenses, penalties, or liabilities of any kind whatsoever, for any relief whatsoever, including monetary, injunctive, or declaratory relief, or for reimbursement of attorneys' fees, costs, or expenses, whether known or unknown, whether direct or indirect (whether by assignment or otherwise), whether under federal, state, or local law, whether alleged or not alleged in the Action, whether suspected or unsuspected, or whether contingent or vested, that arise out of or are related to the factual allegations of, or are based on the same factual predicates as alleged in, the Action's First Amended Complaint. This specifically includes the alleged claims for breach of contract, unjust enrichment, misrepresentation, and/or violations of consumer protection acts or prepaid entertainment contract statutes/health spa acts resulting from Defendant's sales, communications, contracting, billing, and/or cancellations of any membership or service contracts. The Class Representative also gives Defendant a general release.

The Court expressly adopts all defined terms in the Settlement Agreement, including, but not limited to, the definition of Released Claims, Released Parties, and the Class Representative.

10.     All Settlement Class Members are barred and enjoined from (i) filing, commencing, prosecuting, maintaining, intervening in, participating in (as class members or otherwise), or receiving any benefits or other relief from, any other claim, lawsuit, arbitration, or administrative, regulatory, or other proceeding or order in any jurisdiction based on, arising out of, or relating to the claims and causes of action in this Action and/or the Released Claims; (ii) raising as a defense to any claim brought against them for repayment of a loan any of the claims or causes of action in the Action and/or the Released Claims; and (iii) organizing or soliciting the participation of any Class Members into a separate class for purposes of pursuing as a purported class action (including by seeking to amend a pending complaint to include class allegations or by seeking class certification in a pending action) any claim, lawsuit, or other proceeding based on, arising out of, or relating to the claims and causes of action or the facts and circumstances relating thereto, in this Action and/or the Released Claims. The Court finds that issuance of this permanent injunction is necessary and appropriate in aid of the Court's jurisdiction over the Action and to protect and effectuate the Court's Final Approval Order and Final Judgment.  Nothing in this Final Approval Order or the Final Judgment shall preclude any action to enforce the terms of the Settlement Agreement.

12.     Class Counsel are hereby awarded attorneys' fees and reimbursement of their costs and expenses in the total amount of $4,000,000.00 (fees of $3,950,625.57, plus costs of $49,374.43) to be paid from the Settlement Fund pursuant to the terms of the Settlement Agreement.  In addition, the Court hereby awards to Class Representative Laurence Bartell $20,000 for service and assistance to the Class.  As

set forth in the Settlement Agreement, attorneys' fees and costs and the Class
Representative's service award shall be paid from the Settlement Fund prior to the
Claims Administrator's calculation of the Cash Awards and Dues Credit Awards
provided to each Settlement Class Member.

13.     The Claims Administrator shall be paid from the Settlement Fund prior to
the Claims Administrator's calculation of the Cash Awards and Dues Credit Awards
provided to each Settlement Class Member.

14.     Defendant shall contribute to the Settlement Fund of $14,000,000.00 as
calculated in, and in accordance with, the terms of the Settlement Agreement and this
Court's Order dated April 7, 2020.  ECF No. 165.  The Claims Administrator shall then
distribute the Settlement Fund and Consideration in accordance with the terms of the
Settlement Agreement, this Final Order Approving the Settlement, and ECF No. 165.

15.     The Court has jurisdiction to enter this Final Approval Order and the
accompanying Final Judgment.  This Court expressly retains jurisdiction as to all
matters relating to the administration, consummation, enforcement, and interpretation of
the Settlement Agreement and of this Final Approval Order and the accompanying Final
Judgment, and for any other necessary purpose, including, without limitation,

> a. enforcing the terms and conditions of the Settlement Agreement and
> resolving any disputes, claims, or causes of action in the Action that, in
> whole or in part, are related to or arise out of the Settlement Agreement,
> this Final Approval Order, or the Final Judgment (including, without
> limitation, whether a person or entity is or is not a Settlement Class
> Member; whether claims or causes of action allegedly related to this case

are or are not barred by this Final Approval Order and the Final

Judgment);

b.   entering such additional Orders as may be necessary or appropriate to

protect or effectuate the Court's Final Approval Order and the Final

Judgment approving the Settlement Agreement, dismissing all claims on

the merits and with prejudice, and permanently enjoining Settlement Class

Members from initiating or pursuing related proceedings, or to ensure the

fair and orderly administration of this settlement; and

c.   entering any other necessary or appropriate Orders to protect and

effectuate this Court's retention of continuing jurisdiction.

16.    Neither this Final Approval Order and the accompanying Final Judgment

nor the Settlement Agreement (nor any other document referred to here, or any action

taken to carry out this Final Approval Order and the Final Judgment) is, may be

construed as, or may be used as, an admission or concession by or against the

Defendant or the Released Parties of the validity of any claim or any actual or potential

fault, wrongdoing or liability.  Entering into or carrying out the Settlement Agreement,

and any negotiations or proceedings related to it, shall not be construed as, or deemed

evidence of, an admission or concession as to the Defendant's denials or defenses and

shall not be offered or received in evidence in any action or proceeding against any

party hereto in any court, administrative agency or other tribunal for any purpose

whatsoever, except as evidence of the settlement or to enforce the provisions of this

Final Approval Order and Final Judgment and the Settlement Agreement; *provided,*

*however*, that this Final Approval Order, the accompanying Final Judgment, and the

Settlement Agreement may be filed in any action against or by the Defendant or the Released Parties to support a defense of *res judicata*, collateral estoppel, release, waiver, good-faith settlement, judgment bar or reduction, full faith and credit, or any other theory of claim preclusion, issue preclusion, or similar defense or counterclaim.

17.     This Action, including all individual and Class claims resolved in it, is dismissed on the merits and with prejudice against the Class Representative and all other Settlement Class Members, without fees or costs to any party or non-party except as otherwise provided in this Order and the Final Judgment.

18.     The Court will separately enter the accompanying Final Judgment in accordance with Fed. R. Civ. P. 58.

**IT IS SO ORDERED.**

*/s/ Michael H. Watson*
**MICHAEL H. WATSON, JUDGE**
**UNITED STATES DISTRICT COURT**